COMMONWEALTH vs. HENRY L. TAGLIERI.

Suffolk. March 6, 1979. — June 4, 1979.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, WILKINS, & ABRAMS, JJ.

*Search and Seizure*, Probable cause. *Probable Cause.*

Facts in an affidavit in support of a search warrant which showed only that on one occasion a person at the premises to be searched had received a telephone call and placed two bets and fifteen days later a person at the same premises received a telephone call giving the results of a horse race did not constitute probable cause to believe that gaming operations were conducted on the premises, even when coupled with the fact that the calls were made by a convicted gambler from premises where it reasonably appeared gaming operations were being conducted. [199-201]

COMPLAINTS received and sworn to in the District Court of Chelsea on August 2, 1974.

On appeal to the Superior Court a motion to suppress evidence was heard by *DeGuglielmo, J.*, a Municipal Court judge sitting under statutory authority, and the cases were heard by him.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Bernard Manning*, Assistant Attorney General, for the Commonwealth.

*Margaret Hayman* for the defendant.

WILKINS, J. We granted further appellate review in this case to consider whether there was sufficient information contained in an affidavit in support of a search warrant to constitute probable cause. The Appeals Court held that there was not. *Commonwealth* v. *Taglieri*, 6 Mass. App. Ct. 934 (1978). We agree.

We summarize the affidavit. A State police officer, who had experience in gathering information concerning gambling and organized crime, by affidavit presented certain facts on personal knowledge. In May, 1974, pursuant to court order, an electronic interceptor of telephone calls had been authorized concerning two telephones at an address in East Boston. In late May and in the first part of June, 1974, State police officers intercepted and recorded various telephone conversations made to and from the telephones at the East Boston address. The substance of these conversations showed that several individuals were using these telephones to conduct an illegal gambling operation. The police officer was able to identify who these individuals were. Each had been convicted of gambling violations.

Two telephone calls were made from the East Boston address to a telephone listed to the defendant and installed at the Revere premises for which the search warrant was sought. On May 29, 1974, at approximately 3:25 P.M., one of the identified individuals called the Revere telephone number and spoke to a man he called "Butch." During this telephone call, "Butch" placed two bets with

the caller from East Boston. More than two weeks later, at approximately 1:51 P.M. on June 13, 1974, the same individual called the Revere number from the East Boston address, spoke to a man named "Henry," and told "Henry" the results of the first race at Suffolk Downs race track. Based on this information and his personal knowledge, the police officer represented that there was probable cause to believe that certain gaming materials and devices could be found in the Revere house. A judge of the Superior Court issued a warrant to search the Revere premises.

On August 1, 1974, the police entered and searched the Revere premises. They seized various items, including papers with notations indicating number pool play and horse bets. The defendant was charged with the use of a telephone for the purpose of accepting or placing wagers and with being present in a place with betting apparatus. The defendant was convicted in a District Court and appealed to the Superior Court. He filed a motion to suppress the evidence, which was denied. He was then convicted in a jury waived trial in the Superior Court and given concurrent sentences to a house of correction. A Justice of the Appeals Court granted a stay of execution pending appeal.

The Commonwealth argues that the judge issuing the search warrant could use his experience to determine the significance of the facts set forth in the affidavit. We have recently acknowledged that a judge or magistrate may apply common knowledge and may draw reasonable inferences from the facts before him. See *Commonwealth* v. *Alessio*, 377 Mass. 76, 82 (1979). See also G. L. c. 271, § 27. This is consistent with the view that "affidavits for search warrants . . . must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion." *United States* v. *Ventresca*, 380 U.S. 102, 108 (1965). We would not, however, accept an argument that the peculiar experience and knowledge of an issuing judge or magistrate would support the issuance of a warrant. The

result should not turn on who the magistrate is or how much special knowledge he may have. We would accept only inferences which an experienced magistrate could draw as a common sense conclusion from the information set forth in the affidavit. See 1 W. R. LaFave, Search and Seizure 463 (1978). Although some courts have sometimes spoken broadly of the deference to be accorded the expertise of an issuing magistrate, a close examination of the cases reveals no willingness to defer to inferences which do not follow as a matter of common sense from the affidavit. See, e.g., *United States* v. *Berry*, 463 F.2d 1278, 1285 (D.C. Cir. 1972). Although weight should be given to the judgment and experience of a judge or magistrate who issued a warrant, with the result that its issuance will be upheld if there was a reasonable basis for finding probable cause (*Rosencranz* v. *United States*, 356 F.2d 310, 314 [1st Cir. 1966]), the affidavit "must set forth the basis for the magistrate's inferences with enough precision" for the determination to be scrutinized at a subsequent hearing on a motion to suppress or on appeal from a decision on a motion to suppress (*id.* at 317).

We agree with the Commonwealth that weight must be given to the special experience of a law enforcement officer who has executed an affidavit. For example, where such an officer states that he has drawn inferences from facts which an inexperienced person might not draw from those facts, the magistrate may rely on those inferences. Consequently, if a seemingly minor fact has particular significance to an expert, not apparent from common knowledge and experience, because of the method by which criminal operations are conducted, the affidavit should disclose its significance. See 1 W.R. LaFave, Search and Seizure 463 (1978).

Although there were facts constituting probable cause to believe that gaming operations were carried on at the East Boston address, the facts in the affidavit concerning the Revere address showed only that (1) on one occasion a person at the Revere address received a telephone call

and placed two bets, and (2), fifteen days later, a person at the Revere address received the results of a horse race. These two facts do not constitute probable cause to believe that gaming operations were conducted at the Revere address, even when coupled with the fact that the telephone calls were made by a convicted gambler from premises where it reasonably appeared gaming operations were conducted.

The Commonwealth argues, however, that an inference could be drawn from the facts about the gambling operation which would support the conclusion that the defendant accepted wagers from street bookies at the Revere address and dealt with other bookies at a "central" office at the East Boston premises. The Commonwealth suggests that the call from East Boston during which a bet was placed by a person at the Revere address was to collect lay-off bets from a bookie at the Revere address.[1] As to the second telephone call, the Commonwealth suggests that the information concerning the results of the first race at Suffolk Downs advised a confederate at the Revere address to take no further bets and permitted the confederate to balance his books by crediting and debiting his customers' accounts. The Commonwealth argues generally that the issuing judge could have concluded from common knowledge and experience that bookies do not call customers to receive bets and to disclose race results. Hence, the calls from East Boston to Revere must have been from one part of the gambling operation to another.[2]

---

[1] In one form of more socially acceptable risk taking, this process of lay-off bets would be called reinsurance.

[2] No argument based on inferences concerning the nature of the gambling operations was made at the hearing on the motion to suppress or in the Commonwealth's brief on appeal. The claim first was advanced in the Commonwealth's application for further appellate review. If these inferences were so apparent to experienced observers, it is surprising that the Commonwealth did not argue them at the earliest stages of this case.

We reject any suggestion that a judge or magistrate could reasonably draw these conclusions from the limited facts presented in the affidavit. The experienced officer who signed the affidavit did not state that he drew any inferences of the sort the Commonwealth now advances in support of the search. The affidavit did not disclose the length or contents of the telephone calls, beyond what has been described above. For example, it did not disclose the size of the bets placed in the first telephone call, which might have a significant bearing on the Commonwealth's claim that the transaction involved lay-off bets. The inferences which the Commonwealth argues support the issuance of the warrant are not ones which could have been drawn reasonably as a matter of common knowledge by the issuing judge.[3]

We agree with the determination of the Appeals Court that the two telephone conversations referred to in the affidavit in support of the search warrant were the only specific facts on which probable cause concerning the Revere premises could have been based and that those conversations, coupled with any inferences which might reasonably be drawn from the circumstances, did not "establish a probability that the premises sought to be searched contained equipment for registering bets or conducting other gaming operations." *Commonwealth* v. *Taglieri*, 6 Mass. App. Ct. 934 (1978).

*Judgments of the Superior
Court reversed.*

---

[3] The Commonwealth argues that the issuing judge had information from other affidavits submitted simultaneously in support of other warrant requests which justified a finding of probable cause in this case. If there were affidavits submitted in support of other applications for search warrants, they should have been incorporated by reference or attached to the affidavit, or at least presented at the time of the hearing on the motion to suppress. See *Commonwealth* v. *Saville*, 353 Mass. 458, 460 (1968); *United States* v. *Nolan*, 413 F.2d 850, 853 (6th Cir. 1969). They do not appear in the record before us.