## COMMONWEALTH *vs.* STEPHEN H. FENDERSON.

Norfolk. January 10, 1991. - May 9, 1991.

Present: LIACOS. C.J., WILKINS. NOLAN, O'CONNOR, & GREANEY. JJ.

*Electronic Surveillance. Evidence,* Wiretap. *Constitutional Law,* Search and seizure. *Search and Seizure,* Electronic surveillance, Safe deposit box, Probable cause, Affidavit. *Probable Cause.*

The affidavit submitted in support of the application for a wiretap warrant, pursuant to the provisions of G. L. c. 272, § 99 E 3, furnished sufficient information to show a reasonable likelihood that "normal investigative procedures" had failed or would have failed, if attempted, in providing the police with information regarding a defendant's drug-trafficking activities, with the result that the wiretap warrant was properly issued. [83-86]

The affidavit submitted in support of the application for a warrant authorizing the search of two safe deposit boxes contained sufficient information for the magistrate to have concluded reasonably that the articles sought would be found inside the boxes. [86-88]

INDICTMENT found and returned in the Superior Court Department on August 2, 1989.

A pretrial motion to suppress evidence was heard by *Robert A. Mulligan,* J., and the case was heard by *Roger J. Donahue,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*John C. McBride* for the defendant.

*Stephanie Martin Glennon,* Assistant District Attorney, for the Commonwealth.

LIACOS, C.J. The defendant, Stephen H. Fenderson, was convicted by a judge of the Superior Court, sitting without a jury, of trafficking in cocaine. General Laws c. 94C, § 32E (*b*) (2) (1988 ed.). The defendant appeals his conviction, ar-

guing that the motion judge erred in denying his motion to suppress evidence. We affirm.[1]

The defendant argues that affidavits submitted by the police in support of a warrant authorizing a wiretap of his telephone were defective since they did not show adequately that traditional investigative procedures failed or appeared unlikely to succeed. See G. L. c. 272, § 99 E 3 (1988 ed.). The defendant also claims that a warrant authorizing the search of two safety deposit boxes lacked probable cause. We discuss the facts as they pertain to the two issues raised by the defendant.

1. *Failure of normal investigative procedures.* General Laws c. 272, § 99 E 3, provides that a warrant authorizing a wiretap may issue only on "a showing by the applicant that normal investigative procedures have been tried and have failed or reasonably appear unlikely to succeed if tried." This statutory provision is practically identical to the Federal wiretap statute. 18 U.S.C. § 2518 (1)(c) (1990). See *Commonwealth* v. *Vitello*, 367 Mass. 224, 259 (1975); *Commonwealth* v. *Wallace*, 22 Mass. App. Ct. 247, 248 n.2 (1986). In meeting its statutory burden of establishing necessity, "[t]he Commonwealth need not show that traditional investigative techniques were wholly unsuccessful or that the police had exhausted all other investigative procedures before filing its application for a warrant authorizing a wiretap." *Commonwealth* v. *Wilson*, 405 Mass. 248, 250 (1989). The necessity requirement is meant to "assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States* v. *Kahn*, 415 U.S. 143, 153 n.12 (1974). The affidavit will be adequate if it indicates a reasonable likelihood that normal

---

[1]The defendant was also found guilty of possession with intent to distribute marihuana, G. L. c. 94C, § 32C (1988 ed.), possession of a firearm without an identification card, G. L. c. 269, § 10 (*h*) (1988 ed.), and conspiracy to violate the Controlled Substances Act, G. L. c. 94C, § 40 (1988 ed.). These convictions were filed with the defendant's consent and are not implicated in this appeal. *Commonwealth* v. *Frey*, 390 Mass. 245, 246 (1983). *Commonwealth* v. *Delgado*, 367 Mass. 432, 438 (1975).

investigative techniques have failed in gathering evidence, or would fail if attempted. *United States* v. *Ashley,* 876 F.2d 1069, 1073 (1st Cir. 1989). *United States* v. *Abou-Saada,* 785 F.2d 1, 11 (1st Cir.), cert. denied sub nom. *Tannous* v. *United States,* 477 U.S. 908 (1986). In determining whether the Commonwealth has met its burden, the affidavit should be read in a "practical and commonsense manner." *United States* v. *Abou-Saada, supra,* quoting *United States* v. *Scibelli,* 549 F.2d 222, 226 (1st Cir.), cert. denied, 431 U.S. 960 (1977).

In this case, an affidavit signed by Sgt. Paul Stone, a member of the Norfolk County district attorney's Drug Task Force (DTF) was presented in support of the wiretap warrant.[2] The affidavit stated that three informants provided Stone with information regarding the defendant's trafficking in narcotics, and a fourth informant made two supervised purchases of cocaine from the defendant. The four informants, however, were unwilling to testify against the defendant or to introduce undercover agents to the defendant because they were afraid of reprisals. See *United States* v. *Gambale,* 610 F. Supp. 1515, 1539-1540 (D. Mass. 1985), aff'd, *United States* v. *Angiulo,* 847 F.2d 956 (1st Cir.), cert. denied sub nom. *Cincotti* v. *United States,* 488 U.S. 852 (1988), and cert. denied sub nom. *Angiulo* v. *United States,* 488 U.S. 928 (1988); *Commonwealth* v. *Wilson, supra.* Cf. *United States* v. *Ippolito,* 774 F.2d 1482, 1486-1487 (9th Cir. 1985) (suppression of wiretap evidence proper where informer willing to testify and had potential for uncovering entirety of conspiracy). The affidavit also explained that visual surveillance of the defendant's home was attempted, but that, because of the isolated location of the house, extended surveillance was impossible without being detected. The police also unsuccessfully sought information by inspecting the

---

[2] The warrant application also included a second affidavit signed by State Police Lt. Frederick Zabransky, head of the DTF, and by Sgt. Stone. The affidavit explained in a generalized fashion how cocaine is usually distributed within the county, and how the DTF investigates individuals suspected of trafficking in cocaine.

defendant's toll telephone records, and even by going through his garbage. In this context, the use of electronic means of surveillance techniques was not unreasonable. See *United States v. Hoffman,* 832 F.2d 1299, 1306-1307 (1st Cir. 1987); *United States v. Gambale, supra* at 1541.

The police had information that the defendant was part of a conspiracy to distribute drugs. Sgt. Stone's affidavit stated that an informant told the police that the defendant and two other individuals "conducted their drug distribution business out of several area bars." Another informant stated that the defendant had "supplied several lower-level dealers." A third informant told the police that the defendant was the "supplier of the suppliers" in the area. The affidavit concluded that a search of the defendant's home "would likely fail in reaching our broader objectives of discovering the identity of Fenderson's cocaine suppliers, those who may distribute cocaine for Fenderson, and the locations where cocaine, records, and monies derived from the sale of cocaine may be hidden. . . . At this point in the investigation we are not entirely sure where Fenderson keeps his supply of cocaine. It is possible that he uses another location instead of his residence to store the drugs. If that were the case, a search of his residence would be fruitless." The affidavit stated with sufficient specificity why a search of the defendant's home probably would not have yielded the information sought by the investigators. See *United States v. Rodriguez,* 606 F. Supp. 1363, 1368 (D. Mass. 1985).[3]

---

[3]The defendant seems to argue that, because art. 14 of the Massachusetts Declaration of Rights provides greater substantive protection in some areas than does the Fourth Amendment to the United States Constitution, see *Commonwealth v. Amendola,* 406 Mass. 592, 601 (1990) (automatic standing); *Commonwealth v. Blood,* 400 Mass. 61, 74 (1987) (warrantless electronic surveillance); *Commonwealth v Upton,* 394 Mass. 363, 373 (1985) (probable cause), the Commonwealth in this case failed to meet its burden of establishing necessity. The Commonwealth's burden, however, arises from G. L. c. 272, § 99 E 3, not from either the State or Federal Constitution. The defendant does not argue that the statute is unconstitutional. We do not understand how the scope of art. 14 affects the statutory interpretation of G. L. c. 272, § 99 E 3, in the absence of an argument that the statute is unconstitutional, either on its face or as applied to the

The affidavit furnished sufficient information to show a reasonable likelihood that traditional investigative techniques either failed or would have failed, if attempted, in providing the police with information regarding the defendant's drug-trafficking activities.[4]

2. *Probable cause.* Based on the information gathered through the wiretap of the defendant's telephone, the police obtained and executed a search warrant of the defendant's home. During the search, the police found cocaine, marihuana, a shotgun, assorted drug paraphernalia, $1,750 of

---

facts of this case. Additionally, we note that we have stated recently "[t]hat we have not incorporated the requirements and procedures of § 99 into art. 14." *Commonwealth* v. *Price*, 408 Mass. 668, 671 n. 2 (1990). We see no occasion in this case to consider incorporating some unspecified aspect of art. 14 into § 99.

[4]In *Commonwealth* v. *Taglieri*, 378 Mass. 196, 199, cert. denied, 444 U.S. 937 (1979), we stated in dictum that, in determining whether an affidavit furnished probable cause for the issuance of a search warrant, "weight must be given to the special experience of a law enforcement official who has executed an affidavit. For example, where such an officer states that he has drawn inferences from facts which an inexperienced person might not draw from those facts, the magistrate may rely on those inferences." See *Commonwealth* v. *Kaufman*, 381 Mass. 301, 305 (1980) (weight may be given to the experience of law enforcement officers regarding criminal techniques). The Commonwealth urges us to hold that police expertise can be taken into account in evaluating affidavits under G. L. c. 272, § 99 E 3. The magistrate in the instant case, however, could have applied his common sense to the facts stated in the affidavit without the assistance of Sgt. Stone's expertise. While Stone's affidavit makes several references to his expertise as a police officer, the underlying facts stated in the affidavit regarding the unwillingness of informants to cooperate further, the problems with visual surveillance, and the probable futility of searching the defendant's home were not the type of facts which have "particular significance to an expert, not apparent from common knowledge and experience, because of the method by which criminal operations are conducted." *Commonwealth* v. *Taglieri, supra.* Compare *infra* section 2 (discussion of police expertise in inferring connection between drug trafficking and safety deposit boxes); *Commonwealth* v. *Lotfy*, 8 Mass. App. Ct. 126, 131 (1979) (existence of probable cause buttressed by inferences drawn by experienced officer that activities he observed were consistent with use of premises for illegal registering of bets).

In addition, since we find no error in the judge's denial of the motion to suppress evidence, we need not address the defendant's argument that the subsequent search of the defendant's home was tainted by the information gathered through the wiretap.

United States currency, and several keys to safety deposit boxes. On that same day, a magistrate signed a warrant authorizing the police to search the safety deposit boxes. The search of one of the boxes yielded $460,000 in United States currency, while the search of a second box yielded $18,000 and personal documents belonging to the defendant. The defendant argues that the magistrate lacked probable cause to issue the warrant authorizing the search of the safety deposit boxes.[5]

The warrant was issued on the basis of an affidavit signed by Sgt. Stone. The affidavit incorporated by reference the previous affidavits used in support of the wiretap and search warrants. The affidavit stated that large amounts of cocaine and several safety deposit box keys were found in the defendant's home. The affidavit added that "[o]ur investigation of Fenderson was done largely through the use of electronic surveillance. Through this means we learned that Fenderson was actively engaged in the distribution of cocaine. We also confirmed that Fenderson was not employed throughout this investigation. It is safe to say at this point that he was supporting himself by selling illegal narcotics. We have learned through prior investigations that drug dealers often use safe deposit boxes to hide the proceeds generated by narcotics transactions. This allows them to avoid [detection] by law enforcement authorities." The affidavit concluded that "there is probable cause to believe that these safe deposit boxes contain cocaine, monies derived from the sale of cocaine, or other evidence of cocaine transactions."

In order to establish probable cause, an affidavit must "contain enough information for the issuing magistrate to de-

---

[5]The Commonwealth points out that the defendant failed to file an affidavit in support of his motion to suppress as required by Mass. R. Crim. P. 13 (a) (2), 378 Mass. 871 (1979). We have held that a judge properly may deny a motion not accompanied by an affidavit. See *Commonwealth v. Pope*, 392 Mass. 493, 501 (1984); *Commonwealth v. Bongarzone*, 390 Mass. 326, 337 (1983). In this case, however, the judge held a hearing and reached the merits of the defendant's motion. We therefore review the judge's denial of the motion.

termine that the items sought are related to the criminal activity under investigation, and that they may reasonably be expected to be located in the place to be searched." *Commonwealth* v. *Cefalo*, 381 Mass. 319, 328 (1980). "In each case, the basic question for the magistrate is whether he has a substantial basis for concluding that any of the articles described in the warrant are probably in the place to be searched." *Commonwealth* v. *Upton*, 394 Mass. 363, 370 (1985). In evaluating an affidavit, a magistrate may apply his or her common knowledge, while drawing reasonable inferences from the factual information contained in the document. *Commonwealth* v. *Taglieri*, 378 Mass. 196, 198, cert. denied, 444 U.S. 937 (1979).

The magistrate, on learning of the information gathered by the police regarding the defendant's activities in the distribution of drugs, and of the fact that large amounts of cocaine were found in his house, could have applied his common sense and reasonably concluded that the defendant was hiding the profits of his drug trade. This reasonable conclusion, coupled with the fact that keys to safety deposit boxes of a nearby bank were found in the defendant's home and the fact that in Sgt. Stone's experience drug traffickers often use safety deposit boxes to hide money, was sufficient to establish probable cause. *United States* v. *Gonzalez*, 488 F.2d 833, 838 (2d Cir. 1973) (connection between deposit box and narcotics transaction inferred from officer's experience and from fact that on day of transaction defendant possessed deposit keys at nearby bank). See *Commonwealth* v. *Taglieri*, *supra* at 198-199. The affidavit contained sufficient information for the magistrate to have concluded reasonably that the articles described in the warrant were inside the safety deposit boxes.

*Judgment affirmed.*