KerN, Leila R., J.
Defendants were indicted by the grand jury for a number of offenses involving trafficking in cocaine, possession of firearms and ammunition, receiving stolen property, deriving support from prostitution, intimidation of a witness, and attempt to commit perjury. Defendants now move to suppress the evidence obtained from a number of wiretaps. They argue the Superior Court had no authority to issue wiretap warrants for cellular communications. In the alternative, they argue the government did not: (1) have probable cause, (2) meet the necessity requirement, or (3) identify many of the targets with particularity. For the following reasons, the defendants’ motions are DENIED.
BACKGROUND
There is no dispute that on May 12, 2006, Essex County Assistant District Attorneys John Dawley and Kristen Buxton submitted an application for a wiretap warrant to Superior Court Judge Peter W. Agnes. This application was supported by an affidavit of Massachusetts State Police Trooper Timothy Foley. On that same date, Judge Agnes entered an Order and Warrant authorizing the interception of certain wire communications of Richard Jones occurring over a cellular telephone number (617) 909-3711 (Jones cellular phone) relating to the alleged provision of unlawful prostitution.
Similarly, there is no dispute that on May 26, 2006, ADAs Dawley and Buxton again submitted an application for a wiretap to Judge Agnes. This application was again supported by an affidavit of Trooper Foley. Judge Agnes again entered an order essentially extending the wiretap with respect to the Jones cellular phone as well as entering an Order and Warrant authorizing the interception of certain wire communications of Peter Alleyne and others, relating to the purported unlawful possession or distribution of narcotics, occurring over a cellular telephone number (781) 706-2834. Judge Agnes further issued an Order and Warrant permitting law enforcement authorities to surreptitiously install a Global Positioning System tracking device in Alleyne’s 2003 red-colored Mercury Sable.
It is also not disputed that based on information obtained through these two ini tied wiretaps, the government applied for and obtained 5 additional wiretap authorizations in June and July of 2006. On August 21, 2006, Judge Agnes issued 11 search warrants for various homes and automobiles. This memorandum and order deals only with the two wiretaps authorized in May 2006. The parties have essentially agreed that if this court were to suppress the evidence obtained from those wiretaps, all of the remaining wiretaps would fall.
DISCUSSION
A. Wiretap Authority for Cellular Telephones
The pre-1986 version of the federal Wiretapping and Electronic Surveillance statute protected the “privacy of wire and oral communication” when obtained by electronic surveillance. Bartnicki v. Vopper. 532 U.S. 514, 523 (2001); Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 82 Stat. 211; Clifford S. Fishman and Anne T. McKenna, Wiretapping and Eavesdropping §2:10 at 2-16 (2nd ed. 1995). Interception of such communication is illegal, with strict exceptions for police surveillance. 18 U.S.C. §2510. The federal statute is generally viewed as establishing the lowest level of protection, with states being able to provide greater protection if they so choose. Commonwealth v. Vitello, 367 Mass. 224, 247 (1975).
As originally written, the federal statute did not cover radio transmissions, only land-based wire communication. Bartnicki, 532 U.S. at 524. In 1981, the FCC authorized cellular communication. At that time, given that cellular calls traveled over radio waves and land-line calls over wires, the federal statute was interpreted not to apply to calls between two cellular phones. The statute was updated in 1986, and now clearly covers cellular telephones under the expanded definition of wire communication in 18 U.S.C. §2510(1). Bartnicki, 532 U.S. at 524.
Massachusetts generally reads its wire tap statute “in accordance with the construction given the cognate Federal statute by the Federal courts.” Dillon v. Massachusetts Bay Transportation, 49 Mass.App.Ct. 309, 314 (2000) (rev. denied 432 Mass. 1105 (2000)), citing O’Sullivan v. NYNEX Corp., 426 Mass. 261, 264 n.5 (1997). The purpose of the Massachusetts statute is to avoid unreasonable intrusions on individual privacy while allowing controlled interception by the police. Vitello, 367 Mass. at 231. The relevant “wire communications” section applies to “any communication made in whole or in part through the use of facilities for the transmission of communication by the aid of wire, cable, or other like connection between the point of origin and the point of reception.” G.L.c. 272, §99B(1). Massachusetts has not updated its statute to include the language of the 1986 federal version.
The calls intercepted in this case occurred between two cellular phones. Defendants argue that because the State statute has not been updated, it does not cover the pertinent cell-to-cell phone calls, and thus the wire tap warrant was unauthorized. The Supreme Judicial Court has yet to rule on the precise cellular phone issue raised by the defendants. However, it has considered and upheld the validity of a wiretap for a cellular phone on different grounds. Commonwealth v. D’Amour, 428 Mass. 725, 732 (1999); Commonwealth v. Westerman, 414 Mass. 688, 691 (1993) (considering a wiretap of an automobile phone). It is reasonable to infer, as two other Superior Court judges have, that the Court would thus sanction wiretaps for cellular *608 phones, regardless of the type of telephone at either end of the transmission.[1]
Accordingly, communications over cellular phones are included in the definition of wire communications under the state statute and a state court judge has the authority to issue a wiretap warrant for interception of such communications.
B. G.L.c. 272, §99E — Probable Cause and Necessity Requirements
The wiretap statute provides an exception for electronic surveillance performed pursuant to a warrant conforming to G.L.c. 272, §99.[2] A wiretap warrant may only be issued where there exists probable cause to believe that a designated offense has been, is being, or is about to be committed and that interception would lead to evidence of that offense. G.L.c. 272, §99E(2); D’Amour, 428 Mass. 725, 735 (1999). The Commonwealth must also show that normal investigative procedures . . . “reasonably appear unlikely to succeed if tried.” G.L.c. 272, §99E(3). The defendants argue that the warrants for electronic surveillance, beginning with the one of May 12, 2006, were not supported by probable cause and that the Commonwealth failed to establish the inadequacy of traditional investigative procedures.
1. Probable Cause
While a wiretap warrant can only be issued upon a showing of probable cause, “the probable cause required for an electronic surveillance search is no different from that which is necessary to obtain a warrant for a physical search.” Commonwealth v. Wallace, 22 Mass.App.Ct. 247, 248 (1986) (rev. denied 398 Mass. 1101 (1986)). The facts as set forth within the four comers of the affidavit and the reasonable inferences therefrom must be sufficient to establish probable cause. Commonwealth v. Allen, 406 Mass. 575, 578 (1990). Affidavits accompanying warrant applications must be considered as a whole. Commonwealth v. Alvarez, 422 Mass. 198, 207 (1996).
The application for the first wiretap alleged that Richard Jones, Rhonda Adjutant and others were “engaged in a continuing conspiracy to commit a violation of the Massachusetts prostitution statute, G.L.c. 272, §7 ... ,” a designated offense set forth in the Massachusetts wiretap statute, G.L.c. §99(B)(7). Foley alleged that Jones was using a certain cellular phone in furtherance of this conspiracy. Foley indicates that his information is based primarily upon information he received from a confidential informant beginning in March 2006 and from recorded telephone conversations between Richard Jones and Rhonda Adjutant when she was incarcerated at South Bay Correctional Facility from March 6 through April 12, 2006.[3]
The most recent Supreme Judicial Court case to restate the familiar Aguilar-Spinelli standard is Commonwealth v. Mullane, 445 Mass. 702 (2006). “Under the Aguilar-Spinelli standard, if an affidavit is based on information from an unknown informant, the magistrate must be informed of (1) some of the underlying circumstances from which the informant concluded that the contraband was where he claimed it was (the basis of knowledge test), and (2) some of the underlying circumstances from which the affiant concluded that the informant was ‘credible’ or his information ‘reliable’ (the veracity test). Aguilar v. Texas, 378 U.S. 108, 114 (1964). If the informant’s tip did not satisfy each aspect of the Aguilar test, other allegations in the affidavit that corroborate the information could support a finding of probable cause. Spinelli v. United States, 393 U.S. 410, 415 (1969).”
The confidential informant told the affiant, Trooper Foley, that he was aware of information from personal contact with those involved in the criminal activities. He also supplied specific details about the “organization” being run by Jones and Adjutant. He indicated that the business was conducted over several telephone lines controlled by the organization. The CI only had access to one telephone number. The CI indicated that the group relies on utilizing area motels and hotels for prostitution. He also indicated that he was afraid of Jones.
Trooper Foley knows the true identity and residential address of the CI. Commonwealth v. Cast, 407 Mass. 891, 898-99 (1990) (holding the reliability of a Cl’s information may be bolstered by such knowledge). The police were able to corroborate that Jones’s cellular phone is being used to facilitate prostitution activities and that the meetings between the prostitutes and the “johns” occur at area motels. Commonwealth v. Welch, 420 Mass. 646, 651 (1995) (police corroboration of the specific details of the informant’s tip and the accuracy of the informant’s predictive information is sufficient to satisfy both prongs of the Aguilar-Spinellistandard). Commonwealth v. Upton, 394 Mass. 363, 376 (1985) (informant’s tip maybe corroborated and thus made trustworthy by other information presented in the affidavit). Further, the CI placed himself in personal danger by giving information. Commonwealth v. Upton, 390 Mass. 562, 570 (1983) (rev. on other grounds, 466 U.S. 727 (1984)) (“A statement by a known informant who gave information placing herself in personal danger would have had far greater inherent reliability”).[4]
In addition to relying upon the corroborated information from the CI, the affidavit provided transcripts of numerous telephone conversations between Adjutant and Jones while she was being held at SBCC. These conversations not only corroborated the information received from the CI but supplied Trooper Foley with additional information for his affidavit in support of the wiretap application. The conversations referenced prostitution activities as well as what appeared to be drug transactions. While there was not enough information in these conversations to identify *609 and apprehend other people Involved in this organization or to allow the investigators to trace the proceeds of the prostitution operation there was enough information, along with the information from the Cl, to establish probable cause to issue the warrant for the wiretap. [5]
2. Necessity
In addition to a showing of probable cause, Massachusetts requires the affidavit set forth a showing that “normal investigative procedures have been tried and have failed or reasonably appear unlikely to succeed if tried.” G.L.c. 272, §99E(3); Commonwealth v. Fenderson, 410 Mass. 82, 83 (1991). The Supreme Judicial Court has interpreted this provision to mean that “the Commonwealth need not show that traditional investigative techniques were wholly unsuccessful. or that the police had exhausted all other investigative procedures before filing its application for a warrant authorizing a wiretap.” Id. (quoting Commonwealth v. Wilson, 405 Mass. 248, 250 (1989)). The necessity assessment ensures that police do not resort to wiretaps when normal techniques will suffice. The affidavits, when read in a “practical and common sense manner,” must meet a standard of “reasonable likelihood.” Fenderson, 410 Mass. at 83-84 (citations omitted). The judge must conclude that other techniques will not succeed. Id.; Wilson, 405 Mass. at 250.
Trooper Foley’s affidavit describes the inability of other investigative procedures to bear fruit. The toll information on the Jones telephone line would not be useful to determine any higher ups within the conspiracy because the timing of the calls appear to be those made by “johns" to arrange meetings with prostitutes. Surveillance of 39A Cottage Street where Jones lives is difficult because it is located behind another house that fronts on Cottage Street and there is a narrow driveway from the street which is the only access to it. That makes surveillance virtually impossible without being seen. The Cl has given all the information he has and his fear of reprisal is legitimate given the violent natures of both Jones and Adjutant. A male undercover police officer could do little more than arrange meetings to have sex with prostitutes and it would be too dangerous to send a female undercover officer in to pose as a prostitute given the ways in which these women are often “broken down" in order to be willing to enter into a life of prostitution.
As in Commonwealth v. Westerman, 414 Mass. 688, 693 (1993), here “(w]ith regard to necessity, the affidavit points out several specific reasons for the failure of alternative methods of collection ...” There is a strong bond between Adjutant and Jones as was clear from the recorded conversations while she was incarcerated; there is typically a strong bond between a prostitute and a pimp — usually based upon fear; there is no avenue for undercover police work; toll records of the cellular phone will not suffice; and surveillance of 39A Cottage Street, even if it could be accomplished, would be unlikely to lead to any useful information. These circumstances more than adequately satisfy the statutory requirement of necessity.
C. Probable Cause for Wiretap Authorized on May 26, 2006 as to Peter Alleyne
Defendant Alleyne has argued that the extension of the wiretap authorization to him was based solely on inferences and conclusions of Trooper Foley but no evidence of any criminal activity being engaged in by Alleyne. He describes some of the transcribed conversations between Alleyne and Jones — who by this time it is clear is heavily engaged in narcotics activities— but does not indicate what happens before or after some of these phone calls. For example, on May 13, 2006, at 12:56 p.m. Jones calls Alleyne and orders the “same thing.” This call followed a conversation between Jones and a woman in which he told her he was going to “re-up” his drug supply. Alleyne indicates when he will be over. Surveillance is set up near Jones’s residence and at the expected time of Alleyne’s arrival a Mercury Sable pulls up. A registration check indicates the car is registered to Tara Haidaichuk of Malden. Further investigation reveals the Mercuiy was involved in an accident and Alleyne was the operator. An RMV photo of Alleyne is used to confirm that he was the driver who arrived at Jones’s residence.
Alleyne enters Jones’s residence and leaves at 2:40 p.m. Just as Alleyne leaves, Jones advises an unknown female caller on his cellular phone that he had just received an unspecified quantity of illegal narcotics. This female had contacted Jones to see if he had any “vikes.” Jones told her he did not but that he “just got some of that shit.” He also told her that “I gotta sit here and bag all this shit up.” The female asks that Jones save some for her. At 4:11 p.m. another individual calls and arranges for delivery of “a double” at a local motel. A double in this context is know to be a measure of cocaine.
After Jones’s apartment is robbed and $50,000 is stolen, along with drugs, a computer, jewelry and other items, Jones calls Alleyne and tells him he needs the “same thing as yesterday.” Jones and Alleyne agree on a place for Jones’s son’s girlfriend, Jasmine Mon-tero, to meet Alleyne. Jones asks, “how much am I paying for this?” When Alleyne tells him, “the same as last time,” Jones asks, “What was that? Five?” Alleyne replies “Four and a half.” And Jones says “I needed that break,” apparently indicating a price reduction. The meeting between Alleyne and Jasmine Montero occurs, and is observed by Trooper Foley. Alleyne is parked in a parking lot across the street from Morrison’s Bar. Jasmine Montero arrived operating what Trooper Foley has learned is Rhonda Adjutant’s car, often driven by Jones. Alleyne gets into the car driven by Montero remaining there for a only few minutes. This brief meeting is consistent with the inference that the conversation between Alleyne and *610 Jones referred to the delivery of drugs in exchange for $4,500 and that exchange had just occurred.
These intercepted conversations, which are just a few of many between Alleyne and Jones, and the events surrounding them meet the probable cause standard set out above to satisfy the statutory requirements of G.L.c. 272, §99E.
Alleyne challenges the constitutionality of the installation of the GPS Tracking Device in Alleyne’s car for the same reason; i.e., the lack of probable cause. As this court has found probable cause to believe that Alleyne was involved in the distribution of illegal drugs based upon the interceptions of cellular phone conversations between Alleyne and Jones, and the circumstances surrounding those conversations, the installation of the GPS is also valid.
D. Necessity for the May 26, 2006 Wiretap as to Peter Alleyne
The investigation to date has documented an ongoing conspiracy violation of G.L.c. 94C, distributions of illegal narcotics. These activities are conducted in a highly secretive manner and drug dealers are very sensitive to ordinary surveillance and are therefore difficult to follow for any length of time. Normal investigative techniques will not expose the scope of the conspiracies. While the Cl was still relaying information about the activities involving prostitution, he was unable to penetrate the organization and had no knowledge of the drug conspiracy. Again, this court finds the requirements for necessity as set forth in G.L.c. 272, §99E, as described above, have been met.
E. Staleness
Defendants raised the issue of staleness and argued that the Massachusetts State Police had information about the prostitution activities of J ones and Adjutant as early as March 2006 and that there was nothing new in the information put forth in Trooper Foley’s May 12, 2006 affidavit that he didn’t already know as of April 12,2006. The government correctly responded that this was an ongoing situation with Jones and some number of prostitutes. There also was the question of who else might be profiting from these activities. The standard for determining staleness is a flexible one. United States v. Marcello, 531 F.Sup. 1113, 1121 (C.D.Cal. 1982). Where an affidavit recites activity indicating protracted or continuous conduct, time is of less significance. Commonwealth v. Vynorius, 369 Mass. 17, 25 (1975). In Commonwealth v. Wallace, 22 Mass.App.Ct. 247, 251 (1986), the Appeals Court determined that staleness was not an issue even where the Hanson Police had conducted surveillance of the defendant’s home over a seven-year period. Here, there is no viable issue of staleness.
ORDER
For the foregoing reasons, the defendants’ motions to suppress are DENIED

Commonwealth v. Faber Aldana and others, Middlesex MICR 2002-0213-0215, Hamlin, J„ September 25, 2003; Commonwealth v. Frederick Simone, Middlesex MICR 2001-49-001, 002, Hamlin, J., June 8, 2004; and Commonwealth v. Scott Sanders, James Hayes, Anthony Cardillo, Middlesex MICR 2000-1533, 1534, 1539, Donovan, J., August 18, 2003.

General Law c. 272, §99E allows a warrant to be issued:
1. Upon a sworn application in conformity with [§991; and
2. Upon a showing by the applicant that there is probable cause to believe that a designated offense has been . . . committed and that evidence of the commission of such an offense may thus be obtained or that information which will aid in the apprehension of a person who the applicant has probable cause to believe has committed ... a designated offense may thus be obtained; and
3. Upon a showing by the applicant that normal investigative procedures have been tried and have failed or reasonably appear unlikely to succeed if tried.

Inmates’ telephone calls are recorded and the inmates are given notice that their calls are recorded by the institution.

Trooper Foley indicated that he had checked CORI records for both Jones and Adjutant and learned that Jones had been convicted of a number of violent crimes as well as possession of a firearm and Adjutant had been convicted of manslaughter.

At oral argument, the government indicated that it was “prepared to stipulate that at any trial of Rhonda Adjutant the evidence that would be produced at trial would be wholly independent from any recorded conversations obtained through the wiretap.” This court assumes that some of that evidence would be these recorded conversations.