Kern, Leila R., J.
Defendants were indicted by the grand jury for a number of offenses including trafficking in cocaine and possession of firearms and ammunition. Two of the named defendants, Brian Hatch and Peter Alleyne nowmove to suppress the physical evidence seized and any statements made pursuant to their arrest and a search of their vehicles on August 24, 2006. For the following reasons, the defendants’ motions are DENIED.
BACKGROUND
It is undisputed that on May 12, 2006 the Essex County District Attorney’s office submitted an application for a wiretap warrant to Superior Court Judge Peter W. Agnes. The application was supported by an affidavit of Massachusetts State Police Trooper Timothy Foley. On that same date, J. Agnes entered an Order and Warrant authorizing the interception of certain wire communication. There were repeated applications for such grants of authority through August 6, 2006. In each case, there were individuals and telephone numbers added to the original application. In all cases the requested authority was granted. At some point both Hatch and Alleyne were included among the designated individuals. All but one[1] of the original named defendants filed motions to suppress the evidence obtained from those wiretaps. The motions were denied by this court (Comm. v. Alleyne, 23 Mass. L. Rptr. 606, Nov. 1, 2007, Kern, J.).
Judges Agnes further authorized the placement of a Global Position System tracking device on Alleyne’s 2003 red-colored Mercury Sable. On August 21, 2006, Judge Agnes issued 11 search warrants including search warrants for Alleyne’s and Hatch’s vehicles (and certain of their premises not at issue here). Both search warrants indicated the searches were to occur “within a reasonable time and in no event later than seven days from [their] issuance . . .”[2]
FINDINGS OF FACT
On October 2, 2008 testimony was provided by three witnesses, Troopers Robert Schumacher, Timothy Foley and Nunzio Orlando, that this court finds credible, regarding the information gathered on August 24, 2006, that brought the troopers, as well as members of the Massachusetts State Police S.T.O.P. team[3] to that address. Prior to the date in question, Massachusetts State Police had monitored numerous communications between Alleyne and Hatch from which they concluded Alleyne supplied Hatch with cocaine. Orlando testified that these defendants always met twice when conducting a narcotics transaction. At the first meeting, Hatch would give Alleyne money for the drugs. Often, Alleyne would be in contact with his supplier, defendant Robert Sullivan, from whom he would receive the drugs for Hatch. There would then be a second meeting between Alleyne and Hatch when the drugs would be transferred to Hatch.[4]
On August 24, 2006, communications indicated Hatch and Alleyne would meet in the morning at Alleyne’s residence. Surveillance was set up there and troopers saw Hatch going to Alleyne’s residence between 9:00 and 9:30 a.m. and handing him a dark colored package. Although the troopers knew from the monitored calls a second meeting would occur that day they initially did not know where it would take place or even exactly when. Alleyne had to first receive the drugs from Sullivan as he had in the past. As the day progressed, and after numerous calls between Hatch and Alleyne, troopers learned the meet was to take place at the property Hatch leased for his business “Dumpster King” at 24R Bennett Highway, Saugus, MA.
Some law enforcement officers, in unmarked cars, followed Alleyne to that address while other officers stood on property on a hill overlooking Hatch’s business address. Officer Schumacher was in the second car, behind the car with the S.T.O.P. team. As Alleyne pulled into a neighboring parking lot the unmarked cars stayed in the breakdown lane on Route 1, the main public thoroughfare allowing access to both parking lots, so as not to be observed by either Alleyne or Hatch. Troopers Foley and Orlando, overlooking the property from their vantage point on a hill above the parking lots, saw Hatch come out of Dumpster King *640 just before Alleyne arrived, get into his vehicle and drive it to the rear of the lot facing out.[5] As Alleyne approached, Hatch flashed his headlights. The investigations team then moved in, took the defendants from their vehicles and searched the vehicles. In Alleyne’s vehicle they found what appeared to them to be approximately one kilo of cocaine on the front passenger seat, a dark plastic bag in the trunk containing approximately $20,000 and a firearm located in the glove compartment.
DISCUSSION
The defendants have questioned the adequacy of the basis for the search warrants for the two vehicles, i.e., was there probable cause to issue them. They also challenge execution of the search warrants at the time and in the place they were executed. Finally, defendants argue if the warrants were not adequate in either way, the warrantless searches of the vehicles was impermissible. None of these challenges is persuasive.
As defendants state, M.G.L.c. 276, §2B provides that an affidavit in support of an application for a search warrant “shall contain the facts, information and circumstances upon which [the affiant] relies to establish sufficient grounds for the issuance of the warrant.” Commonwealth v. Sheppard, 394 Mass. 381, 388 (1985). When Judge Agnes was presented with the information in support of the search warrants he had already reviewed repeated applications over a three-month period to extend authorization for the wiretaps involving various crimes including drug trafficking and these defendants. Further, the application for these search warrants was supported by “affidavit(s), consisting of a total of 164 pages.” The information as to these two defendants was derived primarily from earlier intercepted wiretaps and surveillance. A review of the information makes it clear it meets the standard “that the items sought are related to the criminal activity under investigation, and that they reasonably may be expected to be located in the place to be searched.” Commonwealth v. Traux, 397 Mass. 174, 178 (1985), quoting Commonwealth v. Cinelli, 389 Mass. 197, 213 (1983). This court finds, as did Judge Agnes, there was probable cause to believe that items, delineated in the addendum to the search warrants, would be found in one or both vehicles at some point in the next seven days.
Defendants then argue even if the search warrants were supported by probable cause the warrants did not specify an anticipatory event for their execution. Anticipatory warrants are not per se unconstitutional simply because they fail to assert contraband is presently in the place to be searched. See Commonwealth v. Soares, 389 Mass. 149, 154-55 (1981). Moreover, the Fourth Amendment to Article 14 does not require explicit directions concerning the “triggering event” to appear on the face of the warrant. Id. An anticipatory warrant is valid “even though it does not state on its face the conditions precedent to its execution, when (1) clear, explicit and narrowly drawn conditions for the execution of the warrant are contained in the affidavit that applies for the warrant application, and (2) those conditions are actually satisfied before the warrant is executed.” Commonwealth v. Gauthier, 425 Mass. 37, 44-45 (1997) (citing U.S. v. Moetamedi, 46 F.3d 225, 229 (2d Cir. 1995).
Defendants next argue law enforcement impermis-sibly entered upon Hatch’s private property to execute the warrants. With the exception of Commonwealth v. Krisco Corp., 421 Mass. 37, 41-42 (1995), none of the other cases cited by the defendants involved commercial premises. Defendants would have this court extend case law involving searches of houses and the “curtilage” thereof as relevant to the case at hand. Such an extension is disingenuous. The cases cited involved private homes, private and fenced-in back yards, front porches and driveways. Here, law enforcement entered an unlocked commercial parking lot in daylight after surveillance from off the premises indicated to them they had probable cause to believe a transfer of drugs from Alleyne to Hatch was to occur. There was testimony Hatch leased space at 24R Bennett Highway for his business.[6] In Krisco, involving a search of a dumpster outside a commercial establishment, the Court held whether the expectation of privacy is objectively reasonable depended on several factors, including “the nature of the intrusion, whether the government agents had a lawful right to be where they were, and the character of the location searched.” Id. at 42.
As to the character of the location searched, the following factors are important: whether the defendant owned the property, whether he controlled it, and whether it was accessible to others. See Commonwealth v. Nattoo, 70 Mass. Pp. Ct. 625, 631 (2007). Generally, commercial landowners are deemed to have a much lower expectation of privacy than residential landowners since commercial property is both more accessible to the public and more likely to be subject to regular government inspection. See Commonwealth v. Blinn, 399 126, 128 (1987). Here, even if Hatch owned and controlled the parking lot, the facts indicate he did not have a reasonable expectation of privacy since, at the time the police entered it was shortly after 5:00 p.m. in August and the gate leading into the parking lot, visible from both the main road and a parking lot in front of a restaurant adjacent to the property was neither closed nor locked. Customers might have come and gone at will during business hours with impunity.
The nature of the actual intrusion in this case was slight. The police followed Alleyne’s vehicle when it stopped near Hatch’s vehicle and quickly surrounded both cars ordering the men out and onto the ground. They did not search any place in the parking lot except the vehicles and the two defendants, and they did not enter the commercial building.
*641 The defendants also suggest the lack of Massachusetts cases on searches of vehicles except on “public ways” indicates that a search in a commercial parking lot would not be permitted should it come before the appellate courts. There is nothing to support this assertion. The officers had the benefit of a great deal of information obtained from wiretap interceptions between these two defendants over months to know the relationship between the parties. Commonwealth v. Harkness, 35 Mass.App.Ct. 626 (1993). Furthermore, on the date in question they had both electronic interceptions as well as observations from surveillance to support the entry onto a private albeit commercial parking lot. Viewing a drug deal in real time, from a place where they had a right to be, meant the police were not even required to get a warrant before they entered the property to arrest the suspects and execute the search warrants for the cars. See Commonwealth v. McAfee, 63 Mass.App.Ct. 467, 471 (2005) (police may search residence, even without a warrant, if both probable cause and exigent circumstances exist).
Defendants argue exigent circumstances did not exist here and the officers had time to obtain fresh search warrants between the time of the initial calls in the morning between these two defendants and the “meet” that evening. First, the officers did not know in the morning where and when the actual transfer of drugs from Alleyne to Hatch would occur. The troopers had probable cause to believe there were drugs and a handgun in at least one of the vehicles. Had the defendants seen the law enforcement officials before they were surrounded there is reason to believe they would had fled as wiretap interceptions had indicated Alleyne had done in the past when he knew he was being followed; i.e., he would not complete a “meet” to either pick up or deliver drugs in those cases. This particular location allowed law enforcement to set up surveillance of the final approach of Alleyne’s vehicle to Hatch and the flashing of Hatch’s lights from public places, far enough away so they could not be seen by the defendants.
ORDER
For the foregoing reasons, the defendants’ motions to suppress are DENIED.

Rhonda Adjutant.

See Affidavit in support of Search Warrants submitted to J. Agnes on August21, 2006, pp. 159-61 (Alleyne vehicle) and pp. 161-64 (Hatch vehicle).

As of that date, law enforcement officials had learned Alleyne possessed a gun.

Trooper Foley testified he had observed four “meets” between Hatch and Alleyne suggesting a drug transaction prior to August 24, 2006.

Eight photographs were introduced into evidence showing various sight lines of the parking lot, the unlocked gate surrounding the parking lot where the two vehicles were stopped and searched, and the No Trespassing sign on that parking lot. Trooper Schumacher testified, and this court finds credible, Alleyne did not get out of his vehicle to open the gate and the trooper did not observe the No Trespassing sign as they entered the parking lot.

While the Commonwealth did not present evidence about the ownership of the premises, ADA Hickey did state to this court the Commonwealth could call the landlord if this court deemed it necessary. For the reasons stated above, with respect to an unlocked commercial parking lot entered in daylight hours, no such evidence is required.