The defendant, Yasmani Quezada, was convicted by a jury in the Superior Court of breaking and entering in the daytime with the intent to commit a felony therein in violation of G. L. c. 266, § 18. The defendant appeals from his conviction and the denial of his pretrial motion to suppress evidence obtained through an interception warrant pursuant to G. L. c. 272, § 99. The defendant asserts five arguments on appeal. First, the defendant argues that the motion judge erred in denying the defendant's motion to suppress evidence obtained through an interception warrant. He argues that the Commonwealth did not satisfy the requirement, pursuant to G. L. c. 272, § 99(E)(3), that normal investigative procedures had been tried and failed or reasonably appeared unlikely to succeed if tried. Second, the defendant argues that the trial judge erred in allowing the Commonwealth to introduce evidence of the defendant's subsequent bad acts. Such evidence included items found on the defendant's person during arrest (including keys, a box of sandwich bags, and approximately $2,000 in cash), and other items (including heroin) that were recovered from an apartment in Revere (Revere apartment) during the execution of a search warrant. Third, the defendant argues that the trial judge erred in not providing the jury with a constructive possession instruction for the evidence that was admitted regarding the defendant's subsequent bad acts, and that such lack of instruction created an impermissible presumption violating the defendant's due process rights. Fourth, the defendant argues that the trial judge erred in preventing defense counsel from examining a witness about statements that fell within the crime-fraud exception to the attorney-client privilege. Lastly, the defendant argues that the trial judge erred in admitting Sergeant Russolillo's opinion testimony that references made in the wiretap telephone calls of "going to church" refers to a conspiracy to commit a breaking and entering. We affirm, addressing each issue in turn.
Background. We summarize the facts as the jury could have found them, in the light most favorable to the Commonwealth, reserving some facts for later discussion. Commonwealth v. Sanna, 424 Mass. 92, 93 (1997).
1. The interception warrant. On January 7, 2010, on the basis of an affidavit demonstrating cause to believe two telephones were being used to coordinate illegal gaming, a Superior Court judge issued a search warrant authorizing the Massachusetts State police (MSP) to wiretap said telephones. This warrant was renewed three additional times before the MSP intercepted a telephone call that appeared to show that a Federal Bureau of Investigation (FBI) agent was set to pay money to a main target of the MSP investigation. While confirmation was pending whether the FBI was involved with the target, a Superior Court judge renewed the wiretap authorization a fourth time, expanding it to include the defendant's telephone. The judge, at this juncture, was unaware of the possible FBI involvement. Five days after the fourth renewal, however, investigators informed the judge through an affidavit that one of the targets of the MSP investigation was working with the FBI as an informant.
2. The burglary. Between March 17 and March 28, 2010, the MSP intercepted several telephone calls between the defendant and others about "going to go to church [on] Sunday." These intercepted calls also included conversations regarding who would be present at an apartment in the Roslindale section of Boston (target apartment) on Sunday, specifically that "no one's going to be there today, right?" and "on Sundays they're never there ... after four o'clock in the afternoon they're not there ...." The MSP obtained anticipatory warrants for Sunday, March 21, the expected day of the target apartment burglary. The burglary did not take place on this date, and the MSP did not execute the warrants.
Sergeant Russolillo testified at trial that because the MSP intercepted further telephone calls about the defendant and others "going to church" on Sunday, March 28, the MSP decided to assemble near the target apartment on that date.[2] Around 4:15 P.M. on March 28, the assembled MSP team witnessed two individuals arrive near the target apartment in a truck. The individuals proceeded down the driveway toward the target apartment's back entry and, about seven minutes later, proceeded back up the driveway, returning to the truck with their hands in their pockets. After the two individuals drove away, an MSP trooper swept the target apartment for occupants and observed the exterior rear door had been "forcibly opened"; a piece of the wooden doorframe was found lying on the floor. The trooper also observed the apartment was "virtually untouched" apart from the bedroom. In the bedroom, dresser drawers were pulled open, items were lying about, and the mattress had been moved aside. The MSP thereafter obtained a search warrant to search the target apartment and found 900 grams of heroin on a high shelf in the closet of the bedroom.
3. Search warrant for Revere apartment. On May 20, 2010, the MSP executed a search warrant at the Revere apartment. The defendant was arrested outside that apartment while the MSP executed the warrant. At the time of the arrest, the defendant had a key to the Revere apartment, $2,000 in cash, and plastic sandwich bags on his person. During the search of the Revere apartment, the MSP found heroin as well as other items seemingly belonging to the defendant, such as a baby's crib, a baby's birth certificate with the defendant's name, and a photograph of the defendant with a baby. The heroin seized from the Revere apartment was admitted as evidence at trial.
On December 16, 2011, the defendant filed a "renewed motion to suppress" evidence obtained through the electronic surveillance, arguing that had the MSP's applications for the wiretap warrants included the FBI's involvement with the main target of the MSP investigation, the MSP would have been unable to show the necessity requirement of a wiretap pursuant to G. L. c. 272, § 99(E)(3). The defendant's renewed motion to suppress was denied on March 7, 2012.
Discussion. 1. Normal investigative procedures. The defendant first argues that the MSP's application for wiretap authorizations failed to satisfy the requirements under G. L. c. 272, § 99(E)(3), and, thus, the defendant's renewed motion to suppress evidence should have been granted. We disagree.
"[A] warrant authorizing a wiretap may issue only on 'a showing by the applicant that normal investigative procedures have been tried and have failed or reasonably appear unlikely to succeed if tried.' " Commonwealth v. Fenderson, 410 Mass. 82, 83 (1991), quoting from G. L. c. 272, § 99(E)(3). "In meeting its statutory burden of establishing necessity, the Commonwealth need not show that traditional investigative techniques were wholly unsuccessful or that the police had exhausted all other investigative procedures before filing its application for a warrant authorizing a wiretap. The necessity requirement is meant to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime. The affidavit will be adequate if it indicates a reasonable likelihood that normal investigative techniques have failed in gathering evidence, or would fail if attempted. In determining whether the Commonwealth has met its burden, the affidavit should be read in a practical and commonsense manner." Id. at 83-84 (quotations and citations omitted).
Here, the MSP trooper's affidavit in support of the wiretap warrant provided that one of the primary goals of the MSP investigation is the "successful dismantling of ... criminal syndicates" and identifying "persons at higher levels of the organization beyond that of the overall bookmaking operation, people like [the FBI informant]." The motion judge found, and we agree, that "[t]he necessity requirement in G. L. c. 272, § 99 E 3, did not compel the [MSP] to compromise the prosecution of one of their primary organized crime targets by trying to recruit him as an informant." The defendant asserts that it was impossible for the motion judge to reach such a conclusion when the record did not include the degree of cooperation between the FBI and the MSP or the agreement between the FBI and the FBI informant, and that it was possible that "the FBI informant would have given [the MSP] the unique and ground-breaking potential to crack the case wide open without the use of wiretaps." However, it is clear that attempting to use the FBI informant as an informant for the MSP investigation would have thwarted the overall goal of the MSP investigation, that is, to prosecute and dismantle the FBI informant's organization.
Additionally, the affidavit further explained that other normal investigative procedures had been used and exhausted. For instance, other MSP informants used for the investigation were extremely fearful of the FBI informant. The affidavit provided that one informant known as CI-3 "firmly believes" that the FBI informant "would kill [CI-3] were [the FBI informant] to discover that [CI-3] has provided information to [the MSP]." Like the informants in Fenderson, the MSP informants here were unwilling to testify against the defendant and other suspects in the MSP investigation. See Fenderson, 410 Mass. at 84. Moreover, the affidavit also explained that these MSP informants were "unable to penetrate into the organization to any significant degree" and that "attempts to have the informants further penetrate this organization as agents of the [MSP] might place them at substantial risk of their roles as informants being discovered." We agree with the motion judge here that the MSP conducting any further normal investigative procedures would not only have been unlikely to succeed but would likely have compromised the overall goal of "apprehending and prosecuting all the members of [the] organization."
2. Challenged evidence and jury instruction. The defendant next challenges the introduction of evidence found on the defendant and at the Revere apartment during the execution of a search warrant. The defendant argues that the evidence was improperly admitted because (1) it did not pertain equally to all coventurers and therefore could not furnish a motive and intent for the burglary, and (2) its probative value was outweighed by the possibility of unfair prejudice.
Massachusetts Guide to Evidence § 404(b) (2017) provides that other acts are "not admissible to prove a person's character" but such evidence "may be admissible for another purpose, such as proving motive." Here, the items seized from the Revere apartment, including the heroin, were admitted in evidence to show the defendant's motive to commit the burglary, which involved a scheme to steal heroin. Contrary to the defendant's argument, such evidence need not "pertain equally to all coventurers." "There is no requirement that joint venturers share a motive for the success of the venture. Motive is not an element of proof under the theory of joint venture." Commonwealth v. Carroll, 439 Mass. 547, 553 (2003).
Additionally, the probative value of the evidence was not outweighed by the possibility of unfair prejudice, nor did it, as the defendant contends, divert "the attention of the jury from the crime immediately before it." As stated previously, the evidence was admitted solely to show the defendant's motive to participate in the crime. The defendant fails to provide us with any persuasive argument on how the defendant was unfairly prejudiced and how any such prejudice outweighed the probative value of providing the jury with the defendant's potential motive. Moreover, the trial judge carefully provided the jury with detailed instructions on how to weigh this particular evidence in their deliberations. At the time the evidence was introduced, the trial judge gave the following instruction:
"This evidence concerning the narcotics alleged to have been recovered in that apartment in Revere is admitted only for a very limited purpose .... [I]t is for you to decide what evidence is credible and what evidence is believable. That evidence has been admitted for the limited purpose regarding the Commonwealth's theory of the case, being that the object of the breaking and entering was the theft of illegal narcotics. This evidence is admitted only on the issue of the motive and intent of the defendants and for no other purpose.... You must consider these items only for the issue of motive and intent and for no other purpose, and I'm instructing you strongly on that point."
He gave a similar instruction during the final jury charge. The record reflects that the trial judge appropriately balanced the probative weight of the evidence with the risk of unfair prejudice, and determined that the evidence was admissible for the limited purpose of showing the defendant's motive; the judge did not abuse his discretion.
The defendant also argues that the trial judge erred in not providing the jury with an instruction on constructive possession, and that the limiting instructions that were provided contained an impermissible presumption linking the defendant to the admitted evidence, violating the defendant's due process rights. We disagree.
"Due process requires that the government prove beyond a reasonable doubt of every fact necessary to constitute the crime with which [the defendant] is charged. Instructions to the jury that would lead them to believe otherwise are constitutional error." Commonwealth v. Cruz, 456 Mass. 741, 752 (2010) (quotation omitted). Here, the judge's instructions did not contain an impermissible presumption that the defendant was linked to the admitted evidence, rather, the judge's instructions were clear that the jury were "to determine the value that any such evidence should be given" and that the jury were not required to find that the defendant had possession of the heroin in the Revere apartment. The trial judge stated, "[N]either [the defendant] nor [the codefendant] are charged here before you with any issue of possession of that narcotics. It's for you to determine the value that any such evidence should be given but you must consider it only for the limited purpose regarding intent and motive and not consider it otherwise." The defendant, again, provides us with no persuasive argument or case law that would lead us to conclude that the judge's jury instructions created an impermissible presumption that the defendant was linked to the Revere apartment heroin.
3. Defense counsel's questioning of Pimental. The defendant next argues that the trial judge incorrectly precluded defense counsel's cross-examination of Altagracia Pimental based on the attorney-client privilege. The defendant contends that cross-examination concerning "false representations [Pimental] may have made to her attorney" should have been permitted because it satisfied the crime-fraud exception to the attorney-client privilege. We disagree.
The defendant's questioning regarding Pimental's false representations to her attorney started with the defendant asking Pimental if she was aware that her attorney had made certain statements at Pimental's bail hearing. When Pimental answered that she was not present at the bail hearing either in person or on videotape, defense counsel changed the topic of questioning. Such change in questioning was not, as the defendant contends, due to the trial judge's previous sidebar comment that "my attena[e] are up a bit on your questioning, ... because ... [Pimental is] entitled not to have the attorney/client privilege breached." Rather, defense counsel changed the line of questioning because there was nothing further to inquire about Pimental's knowledge of what was said at the bail hearing since she had not been present.
4. Sergeant Russolillo's testimony. Lastly, the defendant argues that the trial judge erred in allowing Sergeant Russolillo's testimony about the meaning of "going to church" because such testimony does not qualify as expert or lay opinion.[3]
Sergeant Russolillo testified that the MSP had intercepted several telephone conversations where the suspects "spoke about again going to church" and that because of those statements, Sergeant Russolillo "believed what was going to happen on the 21st would happen on the 28th." The defendant maintains that this testimony was Sergeant Russolillo's lay opinion interpreting the phrase "going to church" to mean a conspiracy to commit a burglary. However, such testimony was provided to show Sergeant Russolillo's state of mind and why he decided to assemble a MSP team outside the apartment on March 28, 2010. "Where one's state of mind is important, the person may himself testify about it." Carriere v. Merrick Lumber Co., 203 Mass. 322, 327 (1909). The trial judge did not abuse his discretion in allowing such testimony.
Judgment affirmed.

According to the testimony of Altagracia Pimental, one of the residents of the target apartment, on that date, there was an estimated one-half kilogram of heroin under a mattress in the apartment and about $15,000 in cash in a drawer.

The Commonwealth concedes that Sergeant Russolillo's testimony was not admissible as expert opinion.