COMMONWEALTH vs. CARMELLO RAMOS.

Hampden. January 4, 1988. — April 19, 1988.

Present: WILKINS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Search and Seizure*, Affidavit, Probable cause. *Probable Cause. Constitutional Law*, Search and seizure. *Evidence*, Admitted without objection.

This court refused to consider a certain claim of illegality with respect to a search of a criminal defendant's apartment where the issue was not properly presented or argued to the trial judge. [211-212]

Restatement of the principles applicable to the determination whether an affidavit based on an informant's tip provides probable cause for the issuance of a search warrant. [212-213]

An affidavit submitted in support of an application for a search warrant, in which the basis of one informant's tip as well as his veracity were established, and in which the reliability of the other informant's tip was independently corroborated by other information, was sufficient to justify the magistrate's issuance of a search warrant. [213-214]

The judge in a criminal case did not err in denying the defendant's motion for a hearing to challenge the veracity of statements contained in an affidavit submitted in support of an application for a warrant to search the defendant's apartment, where the defendant did not make a substantial preliminary showing of intentional falsity or reckless disregard for the truth in the statements in the affidavit. [214-216]

Nothing in the record before the judge who correctly denied a criminal defendant's motion for a hearing pursuant to *Franks* v. *Delaware*, 438 U.S. 534 (1978), demonstrated that the judge failed to recognize his discretionary power to grant such a hearing even if one was not constitutionally required. [216]

At the trial of an indictment charging trafficking in heroin, no substantial risk of a miscarriage of justice was created by evidence and the prosecutor's argument that the reaction of a narcotics detection dog to the trunk of an automobile in which the defendant had been a passenger indicated recent possession of the drugs by the defendant, where the evidence further disclosed that 400 bags of heroin were later found in the defendant's apartment. [216-217]

INDICTMENT found and returned in the Superior Court Department on December 13, 1984.

Pretrial motions to suppress evidence were heard by *Charles R. Alberti,* J., and the case was tried before *John F. Murphy, Jr.,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*John M. Thompson* for the defendant.

*Dianne M. Dillon,* Assistant District Attorney, for the Commonwealth.

LYNCH, J. Carmello Ramos was indicted for conspiracy to traffic in heroin, trafficking in heroin, conspiracy to possess heroin with intent to distribute heroin, and possession of heroin with intent to distribute. The defendant filed two pretrial motions to suppress, on the grounds that the affidavit in support of a warrant to search his apartment contained intentional or reckless misstatements and failed to establish probable cause. Both motions were denied.

The defendant was found guilty and sentenced on the indictment for trafficking in heroin. The defendant's motion for required findings of not guilty on the conspiracy indictments was allowed, and the remaining indictment was dismissed. He thereupon appealed, challenging the judge's denial of his motions to suppress and his request for a hearing under *Franks v. Delaware,* 438 U.S. 154 (1978), and the admission of evidence obtained in an allegedly illegal automobile search. We transferred the case to this court on our own motion. We affirm.

The underlying facts may be stated briefly. On December 3, 1984, Springfield police officers executed a search warrant at the defendant's apartment at 90A Hickory Street, where they found 400 black bags of heroin in the defendant's room. Two days earlier, on December 1, 1984, the police had stopped an automobile in which the defendant and Victor Rafael Espinosa Perez, an alleged coconspirator, were traveling.[1] Ramos and Perez were among a group under surveillance by the Springfield police as a result of information that a group of Hispanic individuals was involved in transporting heroin from

---

[1] Victor Rafael Espinosa Perez and Haydee Melendez were codefendants but are not parties to this appeal.

New York City to Springfield. Ramos and Perez had been observed in each other's company and in the company of known heroin dealers during the autumn of 1984. In the trunk of the car the police found a "sealing machine"; a police narcotics detection dog "reacted in a positive manner" to a spot in the trunk, but no contraband was found. On December 3, the police had also raided Perez's apartment and found 1,000 black bags of heroin, packaged in the same manner as those found in Ramos's apartment.

The search warrant executed at Ramos's apartment was issued on the basis of information presented in an affidavit by Lieutenant Gary Mitchell of the Springfield police department. Mitchell reported the results of the December 1 automobile search, information provided by two anonymous informants, and the observations from surveillance of Ramos and Perez as the basis for probable cause to issue the warrant. Mitchell stated that an informant had visited Ramos's apartment at 8 A.M. that day, had seen several hundred bags of heroin and discussed purchasing some, but had been unable to obtain any because Ramos felt that things were "too hot."

1. The defendant claims that the search of his apartment was illegal because probable cause to issue a warrant was not established. We disagree.

Central to the defendant's argument is the contention that results of the automobile search may not be used to establish probable cause because the automobile search was illegal. The question of the legality of the automobile search was not raised in either of the defendant's motions to suppress. Indeed, when evidence of the fruits of that search was introduced at trial, the defendant made no objection to the admission of the evidence. As a result, the defendant is precluded from raising the issue for the first time on appeal.[2] *Commonwealth* v. *Barnes*,

---

[2] The defendant contends that the issue was raised by counsel for codefendant Melendez at oral argument on various motions. The defendant argues also that the judge actually addressed the issue of the defendant's standing to contest the automobile search in his memorandum opinion, and therefore, the issue is properly preserved by analogy to cases where a judge uses his discretion to consider issues not raised at trial on a defendant's motion for a new trial. See *Commonwealth* v. *Blondin*, 324 Mass. 564, 566-567 (1949), cert. denied, 339 U.S. 984 (1950). We reject these arguments. The actions

399 Mass. 385, 393-394 (1987). *Commonwealth* v. *Marchionda*, 385 Mass. 238, 242 (1982). *Commonwealth* v. *Lewis*, 346 Mass. 373, 383, cert. denied, 376 U.S. 933 (1964), and cases cited.

The affidavit in support of the search warrant is based on information discovered in the automobile search described above and information obtained from anonymous informants. The automobile search alone may have provided the police with the requisite probable cause to search the defendant's home. When coupled with the information supplied by the unknown informants, probable cause to search is clearly established.

For an informant's information to pass muster under art. 14 of the Declaration of Rights of the Massachusetts Constitution, the affidavit must apprise the magistrate of some facts and circumstances showing both (1) the basis for the informant's tip (basis test), and (2) the credibility of the informant or the reliability of his information (veracity test). *Commonwealth* v. *Upton*, 394 Mass. 363, 374-375 (1985) (*Upton II*). See *Spinelli* v. *United States*, 393 U.S. 410, 414-415 (1969); *Aguilar* v. *Texas*, 378 U.S. 108, 114 (1964). If the informant's tip does not satisfy each aspect of the *Aguilar* test, other allegations in the affidavit that corroborate the information could support a finding of probable cause. *Spinelli* v. *United States*, *supra* at 415. *Upton II*, *supra* at 375. *Commonwealth* v. *Upton*, 390 Mass. 562, 566 (1983) (*Upton I*), rev'd, 466 U.S. 727 (1984), *S.C.*, 394 Mass. 363 (1985). See *Commonwealth* v. *Bottari*,

---

of counsel for codefendant Melendez are irrelevant to the question whether Ramos properly preserved the issue of legality of the automobile search. Furthermore, the defendant's analogy to *Blondin* is misplaced. Where a judge elects to consider matters not preserved at trial in acting on a motion for a new trial, his rulings may be considered on the appeal of his denial of the new trial motion. *Commonwealth* v. *McLaughlin*, 364 Mass. 211, 229 (1973), and cases cited. In that situation the judge's action breathed new life into a dead issue. That analogy does not apply where a judge gratuitously makes reference to an issue in a pretrial motion which was not the subject of the motion and which is not then, nor during the course of the trial, made the subject of an objection. The mere fact that a trial judge devoted a sentence in a memorandum opinion to an issue not raised before him cannot serve as a vehicle by which this court will be compelled to reach a constitutional claim not properly presented or argued below.

395 Mass. 777, 783 (1985). Furthermore, affidavits should be read as a whole, not parsed, severed, and subjected to hyper-critical analysis. *United States* v. *Ventresca*, 380 U.S. 102, 109 (1965). What is required is not elaborate specificity, but rather a commonsense showing of probable cause. *Id.* at 108. We are " 'slow to jettison' warrants which exhibit such a commonsense approach." *Upton II, supra* at 376. Applying these principles, we discern no defect in the affidavit here.

In substance the affidavit stated the following: An officer of the Springfield police department received information concerning a group transporting heroin from New York City. The information came from two informants. One informant (informant one) had provided information in the past which the affiant had been able to verify; the other (informant two) had given information leading to arrests and convictions relating to narcotics. The affiant and other officers had had the group under surveillance for some time and had seen the defendant and Perez in the company of known heroin dealers. Both the defendant and Perez are described in some detail. The search of the automobile and the items seized are described. The affidavit also states that one of the informants went to Ramos's house and spoke to Ramos about purchasing some drugs, but Ramos said that things were "too hot." The informant saw several hundred black bags of heroin in the apartment.

It was conceded that the veracity of informant two was established. The portion of the affidavit relevant to informant one's veracity is the affiant's statement, "This informant has provided me with information in regards to narcotics that I have been able to substantiate." The veracity test might be established by the affiant's statement above alone, although the defendant argues that the affiant's statement is a mere conclusion of a police officer, which is insufficient to permit the magistrate to make for himself the determination of probable cause. However, even were we to accept this argument, the affidavit nonetheless withstands scrutiny because there is adequate police corroboration of the informant's tip, as discussed below.

The affidavit essentially contains three distinct pieces of information: (1) a group was transporting heroin from New

York City to Springfield, (2) Perez would be returning from New York in a particular automobile, carrying a large quantity of heroin, and (3) there were several hundred bags of heroin in Ramos's apartment observed by one of the informants. The affidavit does not specify, however, which informant gave which piece of information. Since it is clear that observation of the contraband inside the defendant's apartment satisfies the basis of knowledge test, see *Commonwealth* v. *Borges,* 395 Mass. 788, 795 (1985), we need only discuss possible deficiencies in the veracity prong.

Since the reliability of informant two is conceded, we assume, as did the judge below, that the critical information came from informant one — the informant whose reliability was least established.[3] The question therefore narrows to whether there was independent corroboration for believing that the "tip" was reliable. The police were informed that Perez would be transporting drugs from New York City on a certain date within a limited time frame in a particular automobile. On that date and within that time frame the police stopped an automobile of the precise make, model, color, and registration number as that described by the informant, driven by Perez, with Ramos as a passenger. Cf. *Draper* v. *United States,* 358 U.S. 307, 312-313 (1959). The search of the vehicle disclosed a heat sealing machine and, later, a narcotics detection dog "reacted positively" to the automobile's trunk. Clearly that information tends to corroborate the informant's personal observations at Ramos's apartment. In spite of the affiant's somewhat vague statement as to the informant's past reliability, the corroborating evidence and other information in the affidavit justified the magistrate's determination that, more probably than not, evidence of a crime would be found in Ramos's apartment. Therefore, reading the affidavit as a whole, we conclude that there was probable cause to issue the warrant.

2. The defendant next claims that his motion for a hearing to challenge the veracity of statements contained in the affidavit

---

[3] Although we do not know which informant visited Ramos, it is clear that personal observations were the basis of the informant's knowledge. Assuming informant one did not visit Ramos, then the information came from informant two, whose reliability was established.

was improperly denied, citing *Franks* v. *Delaware*, 438 U.S. 154 (1978). Under *Franks*, a hearing on such a motion is constitutionally required if the defendant makes a substantial preliminary showing that: (1) the affiant made a false statement, either knowingly or intentionally, or with reckless disregard for its truth, and (2) at least in the case of reckless falsehood, the misstatement is necessary to the existence of probable cause.[4] *Commonwealth* v. *Nine Hundred & Ninety-two Dollars*, 383 Mass. 764, 767-768 (1981), citing *Franks* v. *Delaware*, *supra*. No such showing was made here.

The sole basis for the defendant's motion was his affidavit that, contrary to the plain meaning of Lieutenant Mitchell's affidavit, the defendant had received no visitors on the morning of December 3, 1984. The defendant merely challenged the veracity of the police officer's affidavit by offering his own account of the events in question. This does not rise to the level of a substantial preliminary showing of intentional falsity or reckless disregard for the truth in the affidavit accompanying the warrant.[5] See *Franks* v. *Delaware*, *supra* at 171-172 (alle-

---

[4] In *Commonwealth* v. *Nine Hundred & Ninety-two Dollars*, 383 Mass. 764, 768 (1981), we reserved the question whether art. 14 limited the required showing of necessariness to probable cause to situations where the false statement was made recklessly. We need not reach that question here, because we conclude that the defendant has failed to make a substantial preliminary showing that an intentional, knowing, or reckless misstatement was made.

[5] The defendant argues that, where an anonymous informant is used, the *Franks* standard should not be applied rigidly, because the defendant is required either to prove a negative — that is, that the informant was an invention of the police, or to discover that the informant's identity and what the informant actually said. In support of this claim, the defendant cites *People* v. *Lucente*, 116 Ill.2d 133 (1987). We agree that the *Franks* standard should be applied with sensitivity to the facts and circumstances of each case. However, the facts of this case simply do not constitutionally compel a hearing. Had the defendant desired, he could have filed a motion to disclose the informant's identity, yet no such motion was made. Cf. *Commonwealth* v. *Abdelnour*, 11 Mass. App. Ct. 531, 534 (1981). Furthermore, it is highly debatable whether *People* v. *Lucente*, *supra*, offers the defendant any aid. While the court in *Lucente* did state a preference for case-by-case determinations of *Franks* issues where anonymous informants are involved, the same court also cautioned that "the precise standard lies somewhere between mere denials on the one hand and proof by a preponderance on the other." *Lucente*, *supra* at 152. Here, the defendant has done no more than submit a "mere denial" of Lieutenant Mitchell's affidavit. As noted by

gations must be accompanied by offer of proof); *Commonwealth* v. *Nine Hundred & Ninety-two Dollars*, 383 Mass. 764, 774-775 (1981) (same).

The defendant also argues that, even if a hearing were not constitutionally required, the judge erred in failing to recognize his discretionary power to grant such a hearing. See *Commonwealth* v. *Valdez*, *ante* 65, 69 (1988). A ruling that the court has no power to direct an act, when in fact the act is discretionary, is an error of law. See *Peterson* v. *Cadogan*, 313 Mass. 133, 134 (1943); *Commonwealth* v. *Fontain*, 127 Mass. 452, 455 (1879); *Commonwealth* v. *McFarland*, 15 Mass. App. Ct. 948, 949 (1983); *Commonwealth* v. *Edgerly*, 13 Mass. App. Ct. 562, 571-572 (1982), and cases cited. However, nothing in the record demonstrates that the judge acted in the belief that he was without discretionary power. Evidence adduced at trial but not before the motion judge that plausibly could be construed as refuting Mitchell's affidavit cannot be determinative of the propriety of the motion judge's decision.[6] In support of the motion the defendant presented a one-page affidavit stating that he had received no visitors on the morning in question. On such a record, it was within the judge's discretion to deny the motion. See *Commonwealth* v. *Douzanis*, 384 Mass. 434, 443 (1981).

3. Finally, the defendant argues that the judge erroneously admitted evidence of the reaction of the narcotics detection dog to the trunk of the automobile in which Ramos had been a

---

the *Lucente* court, the *Franks* preliminary showing "must be sufficiently rigorous to preclude automatic hearings in every case." *Id*. at 152. Allowance of the defendant's motion in this case would be tantamount to permitting an automatic hearing. This we decline to do.

[6] In substance, the evidence was that a Springfield police officer, Patrick Turner, had had Ramos's building under surveillance on the morning that the informant allegedly visited Ramos, but Turner saw no one but Ramos enter or leave the building. However, Turner's testimony could be seen as self-contradictory as to the exact time he reported for duty. He may have begun his surveillance either just before or just after the informant visited Ramos. Turner was not cross-examined on this point. This court is not the proper forum to resolve such a credibility determination and, in any event, this evidence was not before the motion judge at the time he made his decision.

passenger. There was no objection to this testimony.[7] Hence, the issue is generally not open on appeal. See *Commonwealth v. Barnes,* 399 Mass. 385, 393-394 (1987); *Commonwealth v. Marchionda,* 385 Mass. 238, 242 (1982); *Commonwealth v. Lewis,* 346 Mass. 373, 382-383, and cases cited, cert. denied, 376 U.S. 933 (1964). However, the defendant claims that the admission of the evidence and the prosecutor's closing argument that the dog's reaction indicated recent joint possession of the drugs by Ramos created a substantial risk of a miscarriage of justice. *Commonwealth v. Freeman,* 352 Mass. 556, 564 (1967). If we assume that the evidence was not properly admitted, the defendant has not shown us that such a risk was created. Even if we assume that the evidence should have been excluded at trial on a proper objection, it was nevertheless proper to rely upon this information as an element of probable cause for the issuance of the search warrant. Once the evidence disclosed that 400 bags of heroin were found in the defendant's apartment, evidence that may have shown that some quantity of drugs may also have been in an automobile in which he was a passenger, could not loom so significant in the jury's verdict of guilty that a miscarriage of justice would result.

*Judgment affirmed.*

---

[7] The defendant did object to the Commonwealth's eliciting from the witness an *interpretation* of the meaning of the dog's actions, but not to the witness' recounting those actions.