Kaplan, Mitchell H., J.
On November 29, 2008, the Superior Court (Ball, J.) issued an order authorizing the interception, monitoring and recording of communications among defendant Ricardo Greene and his associates, agents, and co-conspirators relating to the possession or distribution of cocaine occurring over a certain cellular telephone (the wiretap and the wiretap warrant). Based upon evidence obtained directly or indirectly as a result of the wiretap warrant (and certain extensions of that warrant and follow-on warrants), Christian Miranda, Greene and other defendants were indicted for various offenses generally relating to the possession of cocaine with the intent to distribute it. In a previous decision and order this court denied these defendants’ motion to suppress evidence in which they argued that the affidavit filed in support of the wiretap warrant (the wiretap affidavit) was inadequate to meet the statutory and constitutional requirements for the issuance of such a wiretap warrant. The court incorporates by reference in this memorandum of decision the wiretap affidavit and the description of relevant portions of the wiretap affidavit contained in the MEMORANDUM OF DECISION AND ORDER ON DEFENDANTS’ MOTIONS TO SUPPRESS EVIDENCE OBTAINED FROM ELECTRONIC SURVEILLANCE which issued on January 18, 2011. Defined terms in that memorandum shall have the same meaning in this memorandum of decision. The defendants identified in footnote 1 have filed or joined in a “Motion For Franks Hearing—Motion to Suppress” filed by Miranda and a “Motion for Discovery of Informant Information” filed by Greene. Those motions are now before the court.
The wiretap affidavit submitted in support of the original wiretap warrant was authored by Detective Frederick M. Waggett of the Boston Police Department and Sergeant John M. Brooks of the Massachusetts State Police and executed by them on November 24, 2008. Both of the instant motions are based on the defendants’ contention that the wiretap affidavit contains false statements that the affiants made “either knowingly or intentionally, or with reckless disregard for their truth” and, at least with respect to reckless falsehoods, the misstatements were necessary to establish the statutory requirements for the authoriza *150 tion of a warrant to intercept telecommunications, namely, “that there is probable cause to believe that a designated offense has been, is being, or is about to be committed and that evidence of the commission of such an offense may ... be obtained [by means of a wiretap] and [ujpon a showing by the applicant that normal investigative procedures have been tried and have failed or reasonably appear unlikely to succeed if tried.” G.L.c. 272, §99(E)(2)-(3). See Commonwealth v. Ramos, 402 Mass. 209, 215 (1988).
The motion for a Franks hearing argues that the materials filed in support of that motion create a substantial preliminary showing of false statements in the wiretap affidavit and intentional or reckless conduct in connection with their inclusion in the affidavit, and, therefore, a Franks hearing is constitutionally required. See id. The motion for discovery of informant information requests interim steps before a Franks hearing is convened. First, it requests that the Commonwealth be ordered to produce extensive discovery materials including: (1) all documents concerning: any controlled buys undertaken during the investigation of the crimes charged: any informant who assisted in the investigation; any surveillance undertaken during the investigation; and any efforts by the Boston Police Department to “penetrate” the Magnolia Street Steelers; and (2) copies of all search warrant affidavits authored by Waggett or Brooks within the last ten years. Second, it asks the court to conduct in camera interviews of these two officers and the confidential informant, CRI-01, “to determine if a Franks hearing is necessary.” The motion cites Commonwealth v. Amral, 407 Mass. 511 (1990), in support of its request for in camera interviews. For the following reasons, both of these motions are DENIED.
DISCUSSION
The Motion for a Franks Hearing
Miranda’s motion for a Franks hearing is based principally on the affiants’ statement that Det. Brown told them, during conversations he had with Miranda, that Miranda “openly admitted his involvement with the Magnolia Steelers (the Steelers).” Miranda denies that he made such a statement to Brown. Miranda has submitted his own affidavit in which he acknowledged interactions with Brown in the 1990s, but denies that he ever told Brown that he was a member of the Steelers. Additionally, on March 18, 2010, the court (Gaziano, J.) allowed Miranda’s motion that Brown be ordered to provide a narrative of all his conversations with him. However, as grounds for that discovery motion, Miranda referenced Brown’s assertion, reported in the wiretap affidavit, that Brqwn was familiar with Miranda’s voice. In the narrative prepared by Brown in response to the order, Brown states that he recalls speaking to Miranda in the 1990s to 2004, he believes in excess of ten times, but the conversations blend together. The narrative does not specifically identify an occasion(s) on which Miranda admitted involvement with the Steelers.[2]
The court concludes that an affidavit in which Miranda (and others, see footnote 2) denies that he told Brown that he was a member of the Steelers does not establish a substantial preliminary showing that the affiants made any knowingly false or reckless statement. First, there is no suggestion that the affiants, Waggett and Brooks, were not justified in relying on what Brown, a twenty-year veteran of the Boston Police Department who has tracked the membership and activities of Boston gangs for many years, told them. But even if the affiant was Brown himself, affidavits that simply deny Brown’s averments concerning what individuals told him regarding their involvement in the Steelers, without offering some other evidence to support Miranda’s contention that Brown’s statements are false, are insufficient to require a Franks hearing. The defendants “merely challenged the veracity of the police officer’s affidavit by offering [their] own account of the events in question. This does not rise to the level of a substantial preliminary showing of intentional falsity or reckless disregard for the truth in the affidavit accompanying the warrant.” Commonwealth v. Ramos, 402 Mass. at 215. The court acknowledges that Brown’s narrative of his conversations with Miranda fails to identify an occasion on which Miranda made the statement about “involvement” with the Steelers. However, the court does not find that the narrative constitutes corroborating evidence that Brown’s statement must be false. Miranda’s stated purpose for requesting that narrative, which was prepared as much as twenty years after the conversations in question occurred, was to challenge Brown’s assertion that he could recognize Miranda’s voice. The motion makes no reference to Miranda’s alleged statement concerning the Steelers. In the narrative, Brown noted that his conversations with Miranda all blended together. The fact that he did not identify a conversation in which Miranda specifically referenced “involvement” with the Steelers is not evidence that there is a knowingly false statement attributed to Brown in the wiretap affidavit. Brown was not on notice that he was expected to identify that particular conversation. The preliminary showing necessary for a Franks hearing “must be sufficiently rigorous to preclude automatic hearings in every case.” Id. at 216 n.5 (internal citations omitted). That showing is lacking in this case.
Moreover, Brown’s comments about various individuals self-identifying themselves as members of the Steelers are not necessary to a finding that there is probable cause to believe that Greene (whose cell phone was the phone for which the wiretap was requested) had committed a designated offense or that standard investigative techniques were not reasonably *151 likely to achieve the goals of the investigation.[3] If those statements by Brown were excised from the wiretap affidavit, it would not materially alter its substance with respect to those statutory prerequisites for the issuance of wiretap warrant.[4]
The Motion for Discovery of Informant Information
As noted above, Greene has moved for discovery of informant information as a preliminary step to a ruling on whether a Franks hearing is required. He asks for voluminous documentary discovery and, additionally, for an in camera interview of the affi-ants and CRI-01.
Turning first to the request for documentary discovery, the court notes that there have been several other discovery motions filed by various defendants previously that have been ruled upon by other judges. This request seems more propérly presented to ajudge who had previously addressed the defendants’ discovery requests, as it could be viewed as a request to reconsider their rulings. And, the court observes that the Commonwealth has not charged any defendant based upon a controlled buy involving CRI-01. Rather, descriptions of the controlled buys were offered only to support the issuance of the wiretap warrant. Nonetheless, the court will consider this discovery request in the context of whether there has been a sufficient showing for the court to exercise its discretion to require in camera disclosure of documentary informant information and interviews of the affiants or CRI-01.
In his memorandum in support of his motion, Greene argues that there should exist documentation concerning the controlled buys and other information provided to the police by CRI-01, but his counsel has none. At oral argument, the court asked counsel for Greene whether there had previously been an order that any such documentation be provided to her, such that the absence of this documentation from the discovery material provided her might suggest that the controlled buys never actually occurred. It is the court’s understanding of her response that such an order had not entered, but rather Greene was now moving to see what documentation exists. The assistant attorney general then commented that he was shielded from these reports and such documentation would not normally be produced, absent a specific order, because it could reveal the identity of the confidential informant. Under these circumstances, the fact that defense counsel has not received such documentation is not evidence that CRI-01 did not provide police with the information attributed to him in the wiretap affidavit or participate in controlled buys.
The wiretap affidavit reflects five controlled buys involving Greene and CRI-01 that were monitored by the Boston police. Such controlled buys are ■frequently used to corroborate a confidential informant’s statements concerninganarcoticsdealer. See, e.g., Commonwealth v. Warren, 418 Mass. 86, 89 (1994). Other than the fact that counsel does not have documentation, the court sees no other evidence-based assertion that there is reason to believe that these buys did not occur in the manner described in the wiretap affidavit. In Commonwealth v. Ramirez, 416 Mass. 41, 51-51 (1993), the Supreme Judicial Court considered the materials submitted by the defendant and held: “our review of the affidavits submitted by defendant does not leave us without concern that IT was a fictitious informant.” The SJC then directed the trial court to hold in camera interviews. In the present case, the court is unaware of any extrinsic materials submitted by Greene, or others, that raises a concern that CRI-01 is a fictitious informant.[5] The court finds little support in the case law for informant discoveiy (documentary or interviews) where the request is not supported by some evidence that suggests that the informant does not exist or the controlled buys did not actually occur when the defendant is not charged with a crime based upon a controlled buy. See Commonwealth v. Lugo, 406 Mass. 565, 571 (1990) (“Cases which have considered the subject have maintained the distinction between a demand for disclosure at a pretrial hearing, where the issue is probable cause for arrest or a search, and a demand for disclosure at trial, where the issue is the defendant’s ultimate guilt or innocence . . . Indeed, we have noted that it is revealing of the courts’ approach that nondisclosure is rather readily countenanced at pre-trial hearings, but not so at the trial itselF) (internal citations omitted).
Greene next argues that the only evidence in the affidavit that he is a “local dealer” who sells large quantities of drugs are CRI-0 l’s statements that Greene sells “62’s” and amounts as large as “125’s.” He asserts that there is no evidence that any of the CRI-01 controlled buys were in amounts that are that large. That is true. That contention, however, seemingly addresses only Greene’s argument that the wiretap affidavit contains insufficient evidence that Greene was operating high enough up the drug distribution pyramid such that his drug dealing can be considered “organized crime.” That argument was addressed in the court’s prior ruling on the sufficiency of the wiretap affidavit to support the issuance of the wiretap warrant. The fact that CRI-01 did not himself purchase drugs from Greene in those quantities is not evidence that CRI-01 is fictitious or unreliable. In fact, the affidavit only states that: “According to CRI-01, Greene is known to sell larger quantities of ‘crack’ cocaine including ‘62’s and up to ‘125’s.” It never suggests that CRI-01 said that he ever purchased such large quantities of crack from Greene or that he was the type of buyer who could make such large purchases without raising sub- *152 stantialsuspicionconcerninghimamongdrugsellers.
Perhaps the principal thrust of Greene’s argument that he is entitled to documentary discovery and in camera interviews concerning CRI-01, is his contention that, as reported in the wiretap affidavit, CRI-01 provided so much information to police officers concerning Greene and other purported members of the Steelers, who allegedly participated with Greene in activities relating to the distribution of cocaine, that the following statement by the affiants must be knowingly or recklessly false: “In our opinion, normal investigative procedures have been tried and have failed or if tried will fail to gather sufficient evidence to [achieve the goals of the investigation].” The court disagrees.
First the affiants acknowledge that normal investigative procedures might be sufficient to arrest and prosecute Greene and other persons involved with him in the distribution of narcotics. They however profess to have broader goals for their investigation, including: identifying the multiple sources of narcotics bought and sold by Greene; the seizure and forfeiture of the proceeds of drug distribution activities as well as assets traceable to such proceeds; and permanently dismantling the distribution activities of the organization generally described in the wiretap affidavit. The judge who issued the affidavit necessarily concluded that the factual assertions in the affidavit were sufficient to support the opinion of the affiants concerning the likely effectiveness of normal investigative techniques. This court does not find any support in the case law for Greene’s contention that the affiants’ declaration of their opinion regarding investigative techniques is akin to factual averments, such as that a specific confidential informant had provided specific information concerning criminal activity, such that a Franks hearing should be convened to determine if that opinion was knowingly or recklessly false—at least in the absence of some false factual assertion offered to support the opinion.
Greene attempts to buttress his argument by offering the affidavit of a former DEA agent in which the former agent states that additional physical surveillance should have been conducted and “could have led to significant evidence without the need for electronic surveillance.” The DEA agent, however, goes on to opine: “Due to the lack of information regarding the confidential informant, it is impossible to ascertain whether normal investigative techniques were exhausted.” Presumably, the affiants and Brown did have more information concerning CRI-01. Perhaps, at a Franks hearing the Commonwealth would wish to offer its own experts to opine that, under the circumstances presented, normal investigative techniques would not likely be adequate to achieve the goals of the investigation. This court concludes that the principles underlying Franks do not suggest that a Franks hearing should be a forum in which experts argue over the question of when normal investigative techniques have reasonably been exhausted. “The sufficiency of the affidavit is to be upheld where the . . . issuing court could have reasonably concluded that normal investigatory procedures reasonably appeared unlikely to succeed.” United States v. Ashley, 876 F.2d 1069, 1074 (1st Cir. 1989); see also Commonwealth v. Fenderson, 410 Mass. 82, 83-84 (1991) (noting similarities between federal necessity requirement and the Massachusetts necessity requirement, and citing Ashley in construing the Massachusetts necessity requirement). In this case, the wiretap affidavit provided the warrant issuing judge with specific factual allegations concerning: the information that the affiants had gathered from CRI-01; the reasons that they believed that CRI-01 was reliable; controlled purchases of drugs; physical surveillance; trash analysis; and telephone toll analysis. The af-fiants opined that they did not believe that they were likely to be able to complete the goals of their investigation without a wiretap. The judge who authorized the wiretap had sufficient information reasonably to conclude that the factual averments in the affidavit supported the affiants’ opinion.
ORDER
For the foregoing reasons, the defendants’ motions for a Franks hearing and for the discovery of informant information are DENIED.

Sometime after Miranda filed his Fl anks motion, defendants Greene and Crawford submitted affidavits in which they attested that they had never told police officers that they were members of the Steelers. Greene also filed the affidavits of an additional seven individuals identified in the wiretap affidavit, but not named as defendants in these actions, in which they denied that they had ever acknowledged membership in the Steelers to any police officer.

It may be noted that the affidavit also states the Greene (and Carter) had Steeler insignia tattooed on them.

Miranda also argues that the averment in the wiretap affidavit that standard investigative techniques would not be adequate to achieve the goals of the investigation is inconsistent with the statements concerning the information that CRI-01 has been able to provide concerning the defendants and the Steelers. This is the principal basis for Greene’s motion for informant information and is addressed in the discussion of that motion.

Greene attests that he was under house arrest between August 14, and September 13, 2008 and the wiretap affidavit asserts CRI-01 made controlled buys from Greene in September. There is nothing in the juxtaposition of these facts that suggests that CRI-01 is fictitious.