NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-209

COMMONWEALTH

vs.

DAVID CLASS.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, David Class, entered a conditional guilty plea to two counts of trafficking in a controlled substance in violation of G. L. c. 94C, § 32E (b).[1]  Having reserved his appellate rights, see Mass. R. Crim. P. 12 (b) (6), as appearing in 482 Mass. 1501 (2019); Commonwealth v. Gomez, 480 Mass. 240, 252-253 (2018), the defendant appeals from the denial of (1) an omnibus motion to suppress the fruits of electronic surveillance of the defendant and (2) a motion to suppress the fruits of a series of searches.  We affirm.

---

[1] The Commonwealth entered a nolle prosequi on three additional charges of unlawful possession of a controlled substance with intent to distribute.

Background.  We summarize the facts as found by the motion judges,[2] "supplementing with additional facts as necessary from testimony and evidence that the judge[s] implicitly credited." Commonwealth v. Lariviere, 98 Mass. App. Ct. 440, 441 (2020).

1.  The November 20, 2014 wiretap warrant application.  On November 20, 2014, Special Agent John Barron of the United States Drug Enforcement Administration (DEA) and Detective Thomas Scanlon of the Springfield police department sought, and a Superior Court judge authorized, a wiretap for two telephones used by the defendant.  In their joint affidavit, Special Agent Barron and Detective Scanlon (affiants) indicated that the defendant, who they believed was involved in trafficking heroin and cocaine, was using the two target telephones to "communicate with key members of his organization, customers and source(s) of supply for narcotics."  The affidavit detailed the affiants'

---

[2] In November 2016, the defendant filed his omnibus motion to suppress.  A judge of the Superior Court (first motion judge) held a nonevidentiary hearing on that motion in March 2017.  The defendant then filed an amended motion to suppress raising additional issues related to a lost or missing warrant return. The first motion judge denied both motions without an evidentiary hearing.

The defendant then filed an interlocutory appeal, and the Supreme Judicial Court remanded, ordering an evidentiary hearing be held on the nonwiretap aspects of the motion to suppress.  From May through June 2019, a different judge (second motion judge) held a series of evidentiary and nonevidentiary hearings.  Following those hearings and the filing of a second amended motion to suppress, the second motion judge made findings of fact and denied the motion.

2

investigatory efforts, including the use of a confidential informant (CI) and information learned from a prior investigation of another individual, Daniel Burgos.

On November 6, 2014, the CI told law enforcement that the defendant and another individual, Vito Resto, were partners in drug trafficking activities. The CI had known the defendant for years and previously purchased illegal drugs from him. The affiant believed that Burgos was the main supplier of heroin for the defendant and Resto and that Eddie Santiago was their main supplier of cocaine. The next day, November 7, 2014, law enforcement intercepted a call between Burgos and his girlfriend during which they discussed that the defendant was going to want three to four boxes of heroin.

At the direction and control of law enforcement the CI contacted the defendant on a target telephone, first to arrange to pay a debt and then to arrange a controlled buy of cocaine from the defendant. On November 10, 2014, law enforcement overheard the CI and the defendant discuss the future purchase of cocaine by the CI from the defendant and about Resto asking the defendant for help. On November 13, 2014, the CI called the defendant on one of the target telephones to order cocaine and arrange the pickup. Before the pickup, law enforcement searched the CI for contraband and provided the CI with a recording device and $1,200. Law enforcement observed the CI meet with

3

the defendant in his truck at the agreed upon location and heard a conversation between the CI and the defendant consistent with a drug transaction. After the transaction, the CI handed over to law enforcement the recording device and a baggie containing a substance which tested positive for cocaine. When law enforcement searched the CI again, no other contraband or money was found.[3]

Based on all of the information obtained through a variety of investigative techniques,[4] the Superior Court judge authorized the wiretap. Investigators then began monitoring the defendant's calls on the target telephones.

2. Denton Circle package. From the wiretap, law enforcement learned that a package suspected to contain drugs would be delivered to 31 Denton Circle in the city of Springfield. On December 2, 2014, Special Agent Barron and other law enforcement officers established surveillance of 31 Denton Circle. The target package appears to have been delivered to the Denton Circle address at approximately 10:19

---

[3] The CI later reported going with the defendant to wire money to William Santiago in Puerto Rico and that the defendant called Eddie Santiago to ask the name of the recipient. The defendant asked the CI to put the wire transfer in the CI's name.

[4] The affiants also relied upon information learned from other agencies, toll records, vehicular global positioning system devices, grand jury subpoenas, and search warrants.

A.M. At the same time, DEA Agent Scott Smith received information from law enforcement monitoring the wiretap suggesting that the package had been delivered, but was missing. Agent Smith then searched the vicinity for a United Parcel Service (UPS) driver. Agent Smith found a UPS driver, but not the driver who had delivered the package at Denton Circle. That driver contacted his supervisor. The supervisor advised that the package was recently reported lost or stolen. The supervisor contacted the UPS driver who delivered the package and asked that driver to retrieve the package, which the driver did. The package was returned to the West Springfield UPS distribution hub. The second motion judge found that "[w]hile UPS's collection of the package was likely due, in large part, because of Smith's role as a DEA agent, the target package retrieval was not requested, directed or ordered by law enforcement."

At the UPS facility, a certified narcotics detection dog identified the target package from two separate panels of eight packages. Special Agent Barron then took the package overnight to secure a warrant the next day. On December 3, 2014, police prepared a signed affidavit and warrant application to open the package. The warrant was issued by the same judge who authorized the wiretap, and police opened the package in that judge's lobby. The package contained a kilogram of cocaine.

5

Officer Carey McKenzie completed the warrant return and filed it with the Superior Court clerk's office. Law enforcement subsequently obtained renewals of the wiretap warrant on December 4, December 16, and December 30. None of the renewal applications referred to the 31 Denton Circle package. The defendant was not charged with any crimes as a result of the Denton Circle package.

3. Brookline Avenue package and the defendant's arrest. On January 14, 2015, law enforcement learned from intercepted calls of another package suspected to contain drugs for the defendant to be delivered to 36-38 Brookline Avenue in Springfield. The defendant arrived in front of 36-38 Brookline Avenue in a vehicle while police were surveilling the location. The defendant's codefendant Jose Sierra exited the building with a manila envelope style package and got into the defendant's vehicle. Police then approached the vehicle and placed the defendant and Sierra in custody. Police conducted a patfrisk of the defendant, found "crack" cocaine, powder cocaine, and heroin, and found additional cocaine in the vehicle. Police placed the defendant and Sierra under arrest. The defendant signed a search warrant waiver consenting to a search of his Empire Street residence, and police found money and cocaine at that location. Officer McKenzie obtained a search warrant for

6

the package seized from Sierra, which contained a kilogram of cocaine.

Discussion. 1. Wiretap application. The defendant argues that the affidavit submitted in support of the wiretap application failed to establish probable cause and that normal investigative procedures would have sufficed. "A wiretap warrant may only issue '[u]pon a showing . . . that there is probable cause to believe that a designated offense has been, is being, or is about to be committed . . .[,]'" Commonwealth v. Long, 454 Mass. 542, 555 (2009), quoting G. L. c. 272, § 99 E (2), and that a nexus exists between the offense and organized crime. See id. at 556; Commonwealth v. D'Amour, 428 Mass. 725, 735 (1999). In addition, a warrant authorizing a wiretap must have "a showing by the applicant that normal investigative procedures have been tried and have failed or reasonably appear unlikely to succeed if tried." G. L. c. 272, § 99 E (3). See Commonwealth v. Fenderson, 410 Mass. 82, 83 (1991). Where, as here, a motion judge relies solely on documentary evidence, we review both the judge's findings of fact and conclusions of law de novo. Commonwealth v. Johnson, 481 Mass. 710, 714 (2019), quoting Commonwealth v. Monroe, 472 Mass. 461, 464 (2015).

a. Probable cause. The defendant asserts that the Commonwealth failed to establish probable cause because it

7

relied, in part, on faulty information from an unreliable CI. "When a search warrant affidavit is based on information supplied from an informant, art. 14 [of the Massachusetts Declaration of Rights] requires the [judge] to apply the familiar Aguilar-Spinelli standard, which requires that an affidavit based on information from a CI establish the CI's basis of knowledge and veracity." Commonwealth v. Ponte, 97 Mass. App. Ct. 78, 81 (2020). See Spinelli v. United States, 393 U.S. 410, 415 (1969); Aguilar v. Texas, 378 U.S. 108, 114 (1964); Commonwealth v. Upton, 394 Mass. 363, 374-376 (1985). The defendant does not challenge the basis for the CI's knowledge, thus at issue is only whether the affidavit contained enough information to establish the CI's veracity.

The veracity prong of the Aguilar-Spinelli standard may be met by showing "some of the underlying circumstances from which the affiant concluded that the informant was 'credible' or his information 'reliable . . . .'" Upton, 394 Mass. at 375. Although here the CI did not have an established history of providing information that led to arrests and seizures of narcotics as is typical to prove veracity, see Commonwealth v. Luce, 34 Mass. App. Ct. 105, 108 (1993) ("most common indicator of 'veracity[]' [is] a history of dispensing information to the government which led to convictions or seizure of narcotics"), a

supervised controlled buy can compensate for any deficiencies. See Commonwealth v. Valdez, 402 Mass. 65, 71 (1988).

In this case, the veracity test was satisfied when the CI performed a controlled buy under the supervision of the police. The warrant application described in detail how the CI, under police supervision, planned and executed a controlled buy with the defendant. This included the CI, on November 13, 2014, under direction and control of the police, calling the defendant and coordinating with the defendant the location and time to purchase the cocaine. The police equipped the CI with a recording device prior to the controlled buy, searched the CI for contraband, and supplied the CI with the necessary money for the purchase. The police then directly observed the CI meet the defendant at the specified location in a vehicle to purchase the cocaine and listened via the recording device to a conversation between the CI and the defendant that was consistent with a drug transaction. Finally, the police met with the CI at a predetermined location immediately following the transaction and received a bag from the CI that contained a substance later verified to be cocaine. Under these circumstances, law enforcement's direction, control, and observation of the entire process of the CI purchasing the cocaine from the defendant

9

establishes the CI's veracity under this prong.[5]  See

Commonwealth v. Figueroa, 74 Mass. App. Ct. 784, 787-788 (2009)

("a properly monitored controlled purchase of illegal drugs

provides sufficient corroborating evidence to overcome any

shortfalls in meeting the constitutional reliability

requirements imposed on confidential informants").  Thus, the

controlled buy executed by the CI, when considered in light of

the defendant's previous involvement in DEA investigations[6]  and

the recorded conversation of Burgos mentioning the defendant's

desire to purchase multiple boxes of heroin, provide sufficient

facts for the issuing judge to find probable cause.

b.  Necessity.  Likewise, the defendant's argument that the

Commonwealth was unable to show that the wiretap was necessary

due to a failure of normal investigative procedures is

---

[5] Even if the CI inflated the amount of money the CI owed the defendant and kept the difference for himself, that lie does not undermine the controlled buy of narcotics.

[6] We recognize that the affiant swore that the defendant faced charges of trafficking 200 or more grams of cocaine and incorrectly stated that the charges were "dropped due to evidence tampering issues within the Massachusetts State Crime Lab."  The Commonwealth concedes the dismissal was for lack of probable cause.  However, the defendant's codefendant's case was dismissed due to evidence tampering at the lab.
      In any event, the defendant does not challenge two other drug charges described in the affidavit:  (1) that the defendant also was arrested in New Jersey "after making several sales of multi-ounce quantities of cocaine and "crack" cocaine to a [CI]" and, (2) that the defendant "was arrested in July of 2013 on charges of trafficking 36 [or more] grams of a controlled substance."

10

unavailing.  The necessity requirement for a wiretap warrant "is meant to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime. . . .  In determining whether the Commonwealth has met its burden, the affidavit should be read in a practical and commonsense manner" (quotations and citations omitted).  Fenderson, 410 Mass. at 83-84.

The Commonwealth submitted a thirty-two page affidavit detailing the measures already taken to investigate the defendant, including physically surveilling the defendant, using a confidential source, toll record analysis, and GPS surveillance.  Although these methods did produce results, "[t]he Commonwealth need not show that traditional investigative techniques were wholly unsuccessful or that the police had exhausted all other investigative procedures before filing its application for a warrant authorizing a wiretap."  Fenderson, 410 Mass. at 83, quoting Commonwealth v. Wilson, 405 Mass. 248, 250 (1989).  The affidavit made clear that traditional investigatory methods, such as physical surveillance, had to be limited because of the defendant's extensive knowledge of law enforcement techniques.  The affidavit established that those methods alone were thus incapable of "establish[ing] the necessary elements" of the operation that needed to be surveilled.  Based on our review of the affidavit, we are

11

satisfied that the facts were "'minimally adequate' to support the findings made by the issuing judge." D'Amour, 428 Mass. at 736, quoting United States v. Smith, 726 F.2d 852, 864 (1st Cir. 1984).

2. Motion for a Franks hearing. The defendant argues that the first motion judge erred in denying his request for an evidentiary hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978), to challenge the validity of the affidavit that accompanied the November 20, 2014 wiretap application. We review the first motion judge's determination for an abuse of discretion. See Commonwealth v. Almeida, 496 Mass. 716, 723 (2025); Commonwealth v. Perez, 87 Mass. App. Ct. 278, 285 (2015).

"The defendant is entitled to a Franks hearing only if he makes two 'substantial preliminary showing[s].'" Commonwealth v. Andre, 484 Mass. 403, 407 (2020), quoting Long, 454 Mass. at 552. The defendant first must make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant[s] in the warrant affidavit." Franks, 438 U.S. at 155-156. "Intentionally or recklessly omitted material may also form the basis for mounting a challenge . . . ." Long, supra. Second, the defendant must show that "the allegedly false statement is necessary to the finding of probable cause," or

12

"that the inclusion of the omitted information would have negated the [judge's] probable cause finding" (quotation and citation omitted).  Andre, supra at 408.  If these two "requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." Franks, supra at 171-172.

The defendant challenges numerous statements as false as well as omissions that he claims entitled him to a Franks hearing.[7]  Before addressing these claims, we note that under the

---

[7] The statements the defendant challenges as false are as follows:  (1) if the CI were to sell product in a particular geographic area, the CI had to sell Resto's "and [the defendant's] product"; (2) the defendant was named as a target in a DEA wiretap investigation in 2010, was arrested "after being overheard negotiating for kilogram quantities of cocaine" from Resto, and the charges against the defendant were later dropped "due to evidence tampering issues"; (3) Resto and the defendant were "overheard in several conversations with Burgos" pertaining to the purchase of "multi-box quantities of heroin from Burgos"; (4) the CI "was given $1,600" and "paid [the defendant]" for a drug debt; (5) the defendant knew Resto had 700 grams of raw heroin and that this corroborates the fact that the defendant and Resto "work in collaboration"; and (6) the defendant was "named as a target in an order for a TIII wire intercept" signed by a Massachusetts judge.

The omissions that the defendant claims were known to law enforcement and were material to the judge's determination of probable cause are as follows:  (1) the CI, "despite telling law enforcement that the drug debt owed to [the defendant] was $1,600, gave [the defendant] just $900 of the $1,600 provided by law enforcement"; (2) the defendant "had no involvement in the problems between [the CI] and Resto regarding heroin

13

terms of his conditional plea the defendant reserved the right to appeal, in relevant part, the first motion judge's denial of his November 16, 2016 motion to suppress as well as his June 12, 2017 amended motion to suppress. See Mass. R. Crim. P. 12 (b) (6) ("[T]he defendant may tender a plea of guilty . . . while reserving the right to appeal any ruling or rulings that would, if reversed, render the Commonwealth's case not viable on one or more charges. The written agreement must specify the ruling or rulings that may be appealed . . . ."). Here, the scope of reserved arguments on appeal is "limited to those raised below in the applicable motion[s]." Commonwealth v. Page, 105 Mass. App. Ct. 532, 536 (2025). See United States v. Adams, 971 F.3d 22, 30 (1st Cir. 2020) ("Virtually any and all nonjurisdictional issues not explicitly preserved for appeal in the conditional plea agreement . . . are deemed waived"); United States v. Doherty, 17 F.3d 1056, 1058 (7th Cir. 1994) ("[The defendant]'s 'conditional' plea . . . reserved the right to appeal only the denial of his motion . . . on the ground the motion had stated . . . ."). The defendant challenged some but

---

distribution and refused to involve himself"; (3) the defendant "was not a partner of Resto and consistently referred to Resto's drug business as" Resto's; and (4) the defendant and the CI "discussed going into a drug business together where [the defendant] supplied the drugs and the [CI] supplied the customer base."

14

not all of these statements or omissions in the reserved motions.

In the motions to suppress that are before us on appeal, the defendant did not challenge the veracity of the statement that if the CI were to sell in a particular geographic region, the CI had to sell Resto's and the defendant's product (statement 1).  See note 7, supra.  Likewise, the defendant failed to raise as an issue relevant to the determination of probable cause the alleged false statement and related omission pertaining to his claim that the CI took money from the police when paying the defendant for his drug debt (statement 4 and omission 1).[8]  Id.  These arguments were not before the first motion judge and are therefore waived.  See Page, 105 Mass. App. Ct. at 535-537.  See also Commonwealth v. Honsch, 493 Mass. 436, 456 (2024) ("Where a defendant never attempted to introduce evidence and, therefore, a [motion] judge never precluded such evidence, the [motion] judge could not have abused [their] discretion").

The defendant challenges statements in the affidavit that pertain to charges of trafficking and conspiracy that were

---

[8] We have addressed the issue of the CI's veracity, supra. We further note that "[a] Franks hearing . . . is not designed to impeach the informant's veracity." Commonwealth v. Youngworth, 55 Mass. App. Ct. 30, 38 (2002), quoting Commonwealth v. Amral, 407 Mass. 511, 519 n.8 (1990).

15

brought against the defendant in 2010 as false (collectively, statement 2 and statement 6). See note 7, supra. Specifically, he claims that he was not named as a target of wiretaps in the criminal investigation, that he was not intercepted negotiating cocaine quantities with Resto in 2010, and that the criminal charges were not dismissed due to evidence tampering. The defendant relies solely on his affidavit to support his claim that two of these statements -- that he was named as a target in the 2010 wiretaps and that he was intercepted negotiating cocaine quantities with Resto -- are false. Here, the first motion judge determined that the defendant's uncorroborated affidavit did "not rise to the level of a substantial preliminary showing of intentional falsity or reckless disregard for the truth." Commonwealth v. Ramos, 402 Mass. 209, 215 (1988). Without more of a showing from the defendant than his account of events, it was not an abuse of discretion for the first motion judge to reach this conclusion. Id. (mere allegations of false statements by defendant in affidavit not enough for showing and must be accompanied by offer of proof).

As for the statement concerning the reason for the dismissal of the defendant's 2010 criminal charges, the Commonwealth in its brief concedes that the affidavit misstated the reason the defendant's charges were dismissed, and that they were dismissed for lack of probable cause rather than for

16

evidence tampering. The Commonwealth also notes that Resto, the defendant's codefendant in the 2010 criminal matter, had his conspiracy charge "vacated and dismissed with prejudice . . . [by] SJC Order" due to evidence tampering. The affiants may arguably have been negligent or careless in attributing the basis for the dismissal of the charges against Resto in the 2010 matter to the defendant, but beyond the fact that the misstatement occurred, the defendant does not provide any evidence that the statement was made "intentionally or recklessly" as required for a substantial showing under the first prong of Franks. See Long, 454 Mass. at 552.[9]

Turning to the statement concerning the purchase of multiple boxes of heroin, the Commonwealth acknowledged in the motion hearing that the language in the affidavit was not accurate and that there was no recorded conversation between Burgos, the defendant, and Resto about purchasing boxes of heroin (statement 3). See note 7, supra. The defendant also

---

[9] The defendant relies on Commonwealth v. Dion, 31 Mass. App. Ct. 168, 172 (1991), to support his assertion that the misstatement of a criminal record is per se reckless misrepresentation entitling him to a Franks hearing. This argument is unavailing. While the court in Dion "assume[d], without deciding," that a substantial showing had been made that "the allegations concerning the defendant's prior criminal record constituted a reckless misrepresentation," the court nevertheless found sufficient facts to support a finding of probable cause even after "excising the alleged misrepresentation." Id. at 172-173.

17

claims in his brief that "[t]here is not a single wiretapped conversation in which [he] is overheard discussing multi-box quantities of heroin from Burgos," that he "was mentioned in one wiretap, not multiple," and that "at no point did he appear on [a wiretap]." However, there was in fact a recorded conversation between Burgos and his girlfriend that identified both Resto and the defendant as parties interested in purchasing boxes of heroin. This conversation was transcribed and portions of it were included in the wiretap affidavit. The Commonwealth's broad description of the nature of the wiretap conversation could arguably be considered negligent or careless, but the defendant has not shown that this rises to the level of a "reckless disregard for the truth" that is necessary under the Franks standard. Commonwealth v. Dunn, 494 Mass. 42, 56 (2024), quoting Andre, 484 Mass. at 407-408.

The defendant further challenges an inference drawn from a recorded meeting on November 10, 2014, between the CI and the defendant wherein the affiants reported that the defendant had informed the CI that Resto "had control of 700 grams."[10] The affiants inferred that this "corroborates the fact that [the defendant] and RESTO are working in collaboration" and the

---

[10] The transcript of the conversation states "grand" not "grams." This could be a scrivener's error. The affiants inferred he meant unpackaged heroin, presumably because the conversation referred to bagging narcotics.

18

defendant argues this was false (statement 5).  See note 7, supra.  Assuming without deciding that a defendant can challenge the affiants' inference, we are not persuaded.  The defendant correctly notes that the transcript reflects that he refused to help Resto with that heroin and the affidavit should have conveyed that.  However, the transcript of the recorded conversations established that Resto thought he could collaborate with the defendant in drug dealing, that the defendant was tired of helping Resto, and that the defendant was giving Resto advice on how to bag the heroin.  Given these statements, the defendant has not shown that the inclusion of an inference that the defendant and Resto were collaborating was made with "reckless disregard for the truth," Ramos, 402 Mass. at 215, and by the same token the defendant has not met his burden to show that the affiants improperly omitted a statement that the defendant and Resto were not partners (omission 3).  See note 7, supra.

Finally, the defendant's arguments concerning the remaining omissions -- that the defendant had no involvement in the heroin distribution between the CI and Resto (omission 2), and that the defendant and the CI previously discussed going into a drug business together (omission 4) -- were supported primarily by the affidavit submitted by the defendant.  As we have explained, more is required to establish a material omission under the

19

Franks standard than the defendant's own account of events.
Ramos, 402 Mass. at 215.

Considering our analysis of each incorrect statement and omission, we discern no abuse of discretion or other error in the first motion judge's determination that the defendant was not entitled to an evidentiary hearing to pursue these challenges.  See Franks, 438 U.S. at 155-156; Dunn, 494 Mass. at 56.  Even were we to excise the incorrect statements, sufficient facts remain to support a finding of probable cause based on the defendant's prior involvement in DEA investigations, the recorded conversation of Burgos mentioning the defendant's desire to purchase multiple boxes of heroin, the defendant's statements about packing narcotics, and the controlled buy.

3.  Denton Circle package.  The defendant argues that the second motion judge erred in denying his motion to suppress the package containing cocaine recovered from the Denton Circle address.[11]  We disagree.

---

[11] The Commonwealth in its brief asserts that the defendant's arguments related to the package are waived because evidence of the package did not contribute to the defendant's arrest.  The defendant's conditional plea, however, reserved for appellate review the first motion judge's denial of the defendant's amended motion to suppress on this issue.  Because we proceed infra to review and affirm that ruling, we need not address the Commonwealth's implicit suggestion that the defendant was not prejudiced by it and therefore cannot challenge it at all.

20

When reviewing an order on a motion to suppress evidence, we accept the motion judge's subsidiary findings of fact absent clear error and review independently the judge's ultimate findings and conclusions of law.  Commonwealth v. Jimenez, 438 Mass. 213, 218 (2002).  Additionally, we "leave to the judge the responsibility of determining the weight and credibility to be given oral testimony presented at the motion hearing."  Commonwealth v. Yusuf, 488 Mass. 379, 385 (2021), quoting Commonwealth v. Balicki, 436 Mass. 1, 4 n.4 (2002).  See Commonwealth v. Regan, 104 Mass. App. Ct. 623, 626 (2024) (we "defer to [the motion judge's] assessment of the credibility of the testimony taken").

The defendant argues that UPS, under the direction of law enforcement, seized the package from Denton Circle after it had been delivered.  "The Fourth Amendment, and the accompanying rule of exclusion, apply only to government action.  Evidence discovered and seized by private parties is admissible without regard to the methods used, unless State officials have instigated or participated in the search."  Commonwealth v. Leone, 386 Mass. 329, 333 (1982).  See District Attorney for the Plymouth Dist. v. Coffey, 386 Mass. 218, 221 (1982) ("Neither the Fourth Amendment nor art. 14 [of the Declaration of Rights of the Massachusetts Constitution] is implicated when the State is not involved in the private 'search . . . .'").  For evidence

21

to have been seized here as a result of State action, law enforcement must have induced or directed UPS to provide the evidence, and UPS must have acted with the intent to discover evidence on behalf of the police.  See Commonwealth v. Richmond, 379 Mass. 557, 561 (1980).  See also Commonwealth v. Storella, 6 Mass. App. Ct. 310, 315 (1978) (exclusionary rule does not apply where private party "did not act as agents of the State in acquiring or 'seizing' the evidence").

Here, the second motion judge found that the UPS driver picked up the package from Denton Circle independent of police direction.  Key to this determination was the testimony, which the judge credited, from the DEA agent that his conversation with the UPS supervisor, Jeffrey Herd, was not a direction to seize the package from Denton Circle.  Specifically, the agent testified that the UPS supervisor independently "contacted . . . the driver that delivered the package and asked him to go see where the package was, if it was where he left it, and retrieve it."  The UPS supervisor testified that he did not recall the incident, including the conversation with the DEA agent, or directing the UPS driver to retrieve the package.  Brian Taylor, the other UPS supervisor who testified, also did not recall having a conversation with the UPS driver about retrieving the package.  Finally, Luccio Gill, the UPS driver that was ordered to retrieve the package from Denton Circle, remembers having a

22

conversation with Taylor and retrieving the package from the Denton Circle address, but testified he was unaware at the time that the package may contain drugs or that the authorities inquired about the package when he received the request from Taylor.  Considering the sparse testimony available on the record from those involved and the lack of evidence to the contrary, we decline to disturb the judge's credibility determinations in this case and conclude that it was not an error of law to find there was no State action.  See Coffey, 386 Mass. at 221.

The defendant also argues that law enforcement lacked probable cause to search the package because the search warrant application did not contain sufficient detail establishing the reliability of the narcotics detection dog.  Because this issue was not raised in the motions to suppress, the argument was not considered by the motion judges and is waived on appeal.  Page, 105 Mass. App. Ct. at 535-537.

Orders denying motions to
    suppress affirmed.

By the Court (Henry, Sacks &
    Singh, JJ.[12]),

Clerk

---

[12] The panelists are listed in order of seniority.

Entered:  December 1, 2025.